**Application of the CHESAPEAKE COR-PORATION OF VIRGINIA.**
**Patent Appeal No. 8251.**

United States Court of Customs
and Patent Appeals.
Feb. 5, 1970.

Jacobi, Davidson & Jacobi, Washington, D. C., attorneys of record, for appellant; Siegfried A. Schoedel, Washington, D. C., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents, D. Lenore Lady, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, LANE, Judges, and McMANUS, Chief Judge, sitting by designation.

ALMOND, Judge.

This is an appeal from a decision of the Trademark Trial and Appeal Board, 154 USP 248, affirming the examiner's refusal to register on the Principal Register "SUPERWATERFINISH" as a trademark for kraft paper [1] on the ground that the mark is "so highly descriptive of the goods as to be merely an apt commercial designation * * * believed to be without the ability to distinguish the goods of one entity from the goods of another." Exclusive and continuous use of the mark since at least 1949 is asserted.

The examiner characterized the refusal as being based on the preface to section 2 and the definition of a trademark in section 45 of the Trademark Act of 1946 (15 U.S.C. §§ 1052, 1127). Appel-

---

1. Application serial No. 177,682 filed September 25, 1963.

lant, on the other hand, contends that the mark is not "merely descriptive" of its goods under section 2(e) of the Act (15 U.S.C. § 1052(e)) and, moreover, it is not generically descriptive and has become distinctive of appellant's goods in commerce so as to permit registration under section 2(f) of the Act (15 U.S.C. § 1052(f)). We agree with the solicitor that appellant's contentions frame the questions involved in this appeal.

In a comprehensive opinion dispositive of the issues, the board found and held, one member dissenting, as follows:

The designation "SUPERWATER-FINISH" is not only composed of three descriptive words; but the term "WATER FINISH" admittedly has a well-known meaning in the paper industry and manifestly the addition of the term "SUPER" does not in any way change the inherent meaning of the term "WATER FINISH". * * * In fact, since applicant admittedly is applying a water finish to its Kraft paper, the adjectival superlative designation serves only to emphasize or enhance the descriptive significance of "WATER FINISH", as in the case of a "super-calendering" finish, rather than lend any distinctive character thereto. As such, "SUPERWATER-FINISH" is merely descriptive of applicant's Kraft paper which has been treated with applicant's super water finish. * * *

\* \* \* \* \* \*

Although, as alleged by applicant, it may be the only one in the trade to have used the term "SUPERWATER-FINISH" over a seventeen-year period, a word or term such as that involved in this proceeding, which by its very nature conveys a readily understood meaning and significance, is not elevated to the stature of a registrable trademark merely as a result of origination and long use. * * * That applicant may have adopted and used the term "SUPERWATERFINISH" on its goods with an intent that it function as a trademark does not necessarily establish that it has succeeded

in that regard. That is to say, the ultimate test in a proceeding of this character is what do the customers for Kraft paper understand by the term "SUPERWATERFINISH".

The board then considered ten letters from appellant's customers received in reply to appellant's request to them stating, in essence, that "we would appreciate your indicating whether or not the mark 'SUPERWATERFINISH' identifies only the products of Chesapeake." The board found that a majority of the letters generally indicated an association of the mark in question with appellant's product, stating, however, that the weight to be accorded such letters depends to a large degree on the nature of the mark sought to be registered in each particular case. The board cited several decisions of this court and concluded:

It is our opinion that the designation in issue herein "SUPERWATER-FINISH" * * * falls within the category of marks * * * that may have acquired a "de facto secondary meaning" but which because of its inherent character is not entitled to registration as a trademark under the statute. Admittedly, the record does not show that the composite mark "SUPERWATERFINISH" as such is a common descriptive name of a paper finishing process. But, "WATER-FINISH" is and, as indicated above, the addition of the superlative "SUPER" does not change the inherent significance thereof. Certainly, any manufacturer of Kraft paper treating its product with a water finish which it believes to be superior to similar finishes employed by others should be free to use various adjectives including "super" to describe or extol its finish. The registration sought by applicant would preclude this right.

We consider it well settled that to show that a *common descriptive name* has acquired a de facto secondary meaning, in the sense that some or even many people have come to associate it with a particular producer, is not in itself enough to show that it has become

entitled to registration as a trademark. Roselux Chemical Co. v. Parsons Ammonia Co., Inc., 299 F.2d 855, 49 CCPA 931 (1962). However, we do not feel that that statement of law applies to the facts of this case. The board admits, properly we believe, that the composite mark SUPERWATERFINISH as such has not been shown to be a common descriptive name of a paper finishing process. While "water finish" may be descriptive of an attribute of the paper, more specifically its finish, it cannot be said, based on this record, that the *unitary* designation here in question is no more than a common descriptive name for kraft paper itself. Appellant's customers referred to appellant's product and like products from competitors variously as "Modelfinish" or "butcher paper." The weight of the evidence indicates that the unitary designation SUPERWATERFINISH is considered to be distinctive of appellant's goods by those in the trade, and we do not consider it to be so highly descriptive as to be incapable of registration. The situation before us is not unlike that in In re Ada Milling Co., 205 F.2d 315, 40 CCPA 1076 (1953), where this court stated with regard to the mark "Startgrolay":

> Here appellant has so combined three words into a unitary notation as to result in a mark which, in our opinion, may suggest but does not necessarily describe the character of its goods. While it is, of course, true that if the mark were dissected, the words "Start," "grow," and "lay" might well be descriptive of the characteristics of various types of poultry feed, it is our belief that when the mark is viewed in its entirety, as it is viewed in the market place, it is capable of distinguishing applicants goods from those of others.

 In response to the board's view that the registration here sought would preclude others from describing the finish of their products, we note this court's observation in In re Automatic Radio Mfg. Co., 404 F.2d 1391, 56 CCPA 817 (1969), that "descriptive words *may* become trademarks and subject to protection *as such*, without inhibiting the use of the same words in a non-trademark sense."

The decision of the board is, accordingly, reversed.

Reversed.