57 CCPA

**ROUX LABORATORIES, INC.,**
**Appellant,**

**v.**

**CLAIROL INCORPORATED, Appellee.**

**Patent Appeal No. 8248.**

United States Court of Customs
and Patent Appeals.

June 18, 1970.

Liddy, Sullivan, Hart, Daniels & Baxley, Sylvester J. Liddy, New York City, attorneys of record, for appellant. Joe E. Daniels, New York City, of counsel.

H. C. Dieserud, Fish, Richardson & Neave, David J. Kera, New York City, for appellee.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Chief Judge, Northern District of Iowa, sitting by designation.

McMANUS, Judge.

Roux Laboratories, Inc. appeals from the decision of the Trademark Trial and Appeal Board [1] dismissing its opposition to registration [2] on the Principal Register by Clairol Incorporated of the slogan "Hair Color So Natural Only Her Hairdresser knows For Sure" for a "hair tinting, dyeing and coloring preparation." We affirm.

Roux's opposition is predicated on the grounds that it, like Clairol, is engaged in the manufacture and sale of hair tinting, dyeing and coloring preparations; that it has used certain "descriptive" language in its advertising [3] of those products both before and after any use by Clairol of the slogan sought to be registered; that it believes the slogan "Hair Color So Natural Only Her Hairdresser Knows For Sure" is a common, laudatory advertising phrase which is "merely descriptive" of the goods—indeed, so highly descriptive of them, particularly of their qualities, characteristics and function, as well as of the result to be obtained from their use—that the slogan does not, and could not, function as a trademark to distinguish Clairol's goods and serve as an indication of origin; and that it believes it would be damaged by registration of the slogan because Clairol could employ said registration to harass it and its customers who might utilize that phrase [4] or others similar to it in connection with the sale and advertising of similar merchandise.

Clairol's record is stipulated. It shows that, since 1950, Clairol has marketed products for tinting and dyeing hair under the mark "Miss Clairol" and the notation "Hair Color Bath" [5] to beauty salons and various retail outlets, including drug stores. In 1956, Clairol's predecessor-in-title embarked on an extensive advertising campaign to promote the sale of its "Miss Clairol" hair color preparations, which included advertisements in national magazines, on outdoor billboards, and on car cards for bus and subway transit systems; mailing pieces; radio and television; and point-of-sale display material designed to be used by beauty salons and retailers as window or counter displays in association with the "Miss Clairol" product. The illus-

---

1. Reported at 154 USPQ 253.

2. Application serial No. 145,045, filed May 21, 1962.

3. Roux agrees that the following examples taken from the text of its advertising copy of record, and quoted by the board in its opinion, are typical:

   " * * * only you and your hairdresser know where nature stopped and Roux began."

   " * * * beautifully, lustrously, with completely natural-looking effects."

   " * * * to pick up where nature leaves off * * * natural-looking hair color."

   " * * * so matches nature's look that no one knows it's there!"

   "The essence of good haircoloring is to look so natural that no one knows you used a cosmetic."

4. Nothing of record establishes that Roux or anyone other than Clairol has ever used the specific phrase "Hair Color So Natural Only Her Hairdresser Knows For Sure" here sought to be registered.

5. The expression "Hair Color Bath" was found by this court to be the generic name by which Clairol's product was known to the public, not a mark "capable of distinguishing applicant's goods," and hence unregistrable on the Supplemental Register under § 23 of the Lanham Act. Clairol, Inc. v. Roux Distributing Co., Inc., 280 F.2d 863, 47 CCPA 1165 (1960).

trative exhibits of record reflect a now familiar format for much of that advertising—a large, color photograph of an attractive woman, often accompanied by a young child; the question "Does she * * * or doesn't she?" prominently imprinted on or above the photograph; the slogan "Hair Color So Natural Only Her Hairdresser Knows For Sure" also conspicuously imprinted on or below the photograph, and set apart from the other portions of the advertisement; the mark "Miss Clairol" in large type and the notation "Hair Color Bath" in smaller type below the photograph; a representation of the packaged "Miss Clairol" hair coloring product; and, optionally, advertising text extolling, not unexpectedly, the virtues and advantages of use of the product.

The record further shows that, in the period 1956–1966, Clairol sold over fifty million dollars worth of its "Miss Clairol" hair coloring product and expended some twenty-two million dollars for the above advertising material which contained the slogan sought to be registered. It is stipulated that, so far as the magazine and television media are concerned:

> * * * During the same period, and considering the press runs of all the various periodicals involved, the total number of "impressions" of all the different advertisements in this series in periodicals, all of them prominently displaying the slogan here opposed, have much exceeded 100 million (100,-000,000) (counting as a separate "impression," each copy of each periodical carrying one such advertisement).
>
> * * * * * *
>
> * * * Conservatively estimated, there have been more than a billion audio impressions of this slogan on network television in the United States (one impression being one household having a TV set tuned to a given program at a given time).

The record also shows that, with the exception of a single shipment of goods in 1962, the slogan has not been used on the containers in which the hair color preparation has been packaged or on the bottles of hair color preparation themselves.

The appeal presents several issues:

(1) Is the slogan "Hair Color So Nattural Only her Hairdresser Knows for Sure" "merely descriptive" of Clairol's hair coloring preparations within the meaning of § 2(e) (1) of the Trademark Act (15 USC 1052(e) (1)).

(2) More broadly, is the slogan a "trademark" at all as that term is used in the preamble of § 2 of the Act and is defined in § 45 of the Act (15 USC 1127). In particular, does it function to "identify" the goods as Clairol's and "distinguish them from those manufactured or sold by others"; and, if once "merely descriptive," has it nevertheless "become distinctive" of those goods in commerce, 15 USC 1052(f).

(3) Has "use in commerce" been made of the slogan by Clairol as that expression is defined in § 45 of the Act.

We shall deal with each of those issues seriatim.

■ A principal way of determining whether a particular expression is "merely descriptive" as applied to the goods is to ascertain the reaction of those to whom it is directed—the consumers. In re Colonial Stores, 394 F.2d 549, 55 CCPA 1049 (1968); Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2d Cir. 1961); Vandenburgh, Trademark Law and Procedure, 2nd Edition § 4.30 (1968). We must point out initially that Roux, though it pleaded the matter, has submitted no direct evidence that Clairol's slogan has *merely* a *descriptive* significance to purchasers of hair coloring preparations, to the exclusion of either a suggestive connotation or any origin-indicating significance.[6] It is apparently

---

6. On the other hand, as we shall see later in this opinion, Clairol has submitted no

worthwhile *direct* evidence, by way of customer letters or affidavits or surveys,

Roux's position that the slogan, by reason of its very nature, speaks for itself in that regard.

Concentrating first on whether the slogan is *descriptive,* Roux maintains that the slogan is simply a laudatory advertising expression—a form of "trade puffery" as it were—used to describe and promote the product sold and identified by the recognized trademark "Miss Clairol"; that "there has been no suggestion as to any meaning which could be attributed to this phrase except the obvious one"; and that:

In the instant case the phrase sought to be registered "HAIR COLOR SO NATURAL ONLY HER HAIRDRESSER KNOWS FOR SURE" tells the purchaser only

(1) what the goods are—hair coloring preparations,

(2) what their function is—to make the colored hair look natural,

(3) what their characteristics are—to color so expertly that only a hairdresser could detect the coloring, and

(4) what their use is—to color the hair expertly and thus achieve a natural appearance.

The descriptiveness of the instant slogan is also shown, Roux contends, by the fact that both parties have used other expressions of similar meaning as part of their advertising copy to describe the purpose, characteristics and result of use of their respective products.

Though not free of controversy,[7] we will assume for purposes of discussion that the words "hair color" and "natural" —indeed, the words of the slogan in its entirety—were, at inception of their use, apt descriptive words used in an informative, story-telling manner to describe the goods, their function, use and characteristics. The question is still presented, however, whether the slogan remains *merely* or only descriptive, or whether it now serves an origin-indicating function *in addition to* suitably describing attributes of the goods. That question leads naturally to a discussion of the second, broader issue posed earlier— whether the slogan is a trademark within the purview of the preamble to § 2 and of § 45 of the Act, and, in particular, whether it has "become distinctive" of the goods within the meaning of § 2(f) so as to no longer be *merely* descriptive

that consumers who purchase its products do in fact think of the slogan as identifying the products of a particular, albeit anonymous, source, and employ it as one means whereby they can distinguish those products from others they do not know or do not want. Apparently, the parties are content to have us subjectively decide what we think the consumer's reaction to the slogan has been and would be in the market place and what use she would make of it, based on what inferences we can draw from the evidence that is of record, on the meaning of the words comprising the slogan, and on their respective arguments. We proceed accordingly.

7. There may be some merit to Clairol's preliminary argument that the slogan is only suggestive of the desired result to be obtained from use of the goods, not descriptive. To the women who use "Miss Clairol" hair preparations to change their natural brown hair color to ash blonde or to return their now natural gray hair to something approaching its original color, it could be said that

the slogan "Hair Color So Natural Only Her Hairdresser Knows For Sure", read literally, might not evoke a response which connotes description of the goods or of the result of their use because, as those women must fully realize, the hair color resulting from that use is not in fact "natural" but artificial. True it is that, from the user's standpoint, the ersatz hair color obtained will hopefully be natural-*appearing* or -*looking,* but that arguably is the implicit suggestion, not literal description, of the desirable result or effect to be obtained that the slogan actually arouses. Indeed, in that sense, the slogan might well be characterized as *mis*descriptive of the result obtained on use of the goods in many if not most cases, though certainly not deceptively so. Perhaps it is, as one court put it *in another context* with respect to another mark, used suggestively as "a euphemism for guile in making hair appear what it is not". See Clairol Inc. v. Gillette Co., 270 F.Supp. 371 (D.C.E.D. N.Y.1967), affirmed 389 F.2d 264 (2nd Cir. 1968).

of them.[8] In other words—is it * * or isn't it?

For its part, Clairol relies chiefly on the fact that it has used the slogan "Hair Color So Natural Only Her Hairdresser Knows For Sure" in nearly all of its extensive advertising of its "Miss Clairol" products in various media since 1956, including point-of-sale displays, to establish that the slogan has become well-known to the purchasing public and serves to point to Clairol as the source of the products in association with which the slogan is used. Clairol further contends:

> * * * That the advertising referred to was highly effective in driving home the fact that the slogan mark here involved identifies the applicant, as the source of the goods in connection with which that mark is displayed, is very definitely established by Applicant's Exhibits 10 and 11, * * *.

Those latter exhibits, illustrating many parodies on the slogan and for the most part written by or representing the views of persons in the advertising, newspaper and magazine professions, are of relatively little assistance as direct evidence in determining whether the slogan does serve as an indication of origin to the purchasing public, simply because the record does not establish to what extent, if any, those persons are members of the class who purchase Clairol's goods in the market. In re Duvernoy & Sons, Inc., 212 F.2d 202, 41 CCPA 856 (1954). But that evidentiary void is not necessarily fatal to Clairol's case. See In re Hollywood Brands, Inc., 214 F.2d 139, 41 CCPA 1001 (1954). We are left, then, with the extensive advertising carrying the slogan and promoting its product that Clairol has sponsored over the years, and whatever inference can be drawn from that advertising and the remaining evidence of record.

Clearly, the board found an inference favorable to Clairol:

> Based on the record herein, which also includes various references to and/or parodies on applicant's slogan both by the press and advertising trade, there can be no question that applicant has so extensively promoted its slogan that it *must have made some impact on the purchasing public as an indication of origin.* While opposer urges that the advertising and promotion of the product is all directed to "MISS CLAIROL", and that the phrase "HAIR COLOR SO NATURAL ONLY HER HAIRDRESSER KNOWS FOR SURE" is merely a laudatory

---

8. The pertinent portions of 15 U.S.C. § 1052 read:

> No trademark *by which the goods of the applicant may be distinguished from the goods of others* shall be refused registration on the principal register on account of its nature unless it—
>
> * * * * *
>
> (e) consists of a mark which, (1) when applied to the goods of the applicant is *merely descriptive* or deceptively misdescriptive of them, * * *
>
> (f) except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing herein shall prevent the registration of a mark used by the applicant *which has become distinctive* of the applicant's goods in commerce. * * * [Emphasis supplied.]

15 U.S.C. § 1127 provides:

> * * * * *
>
> *Trademark.* The term "trademark" includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant *to identify his goods and distinguish them from those manufactured or sold by others.* [Emphasis supplied.]

As this court stated in In re Cooper, 254 F.2d 611, 45 CCPA 923 (1958):

> The introductory clause [of section 2] and the quoted portion of subsection (e) are complementary and opposite sides of the same coin to the extent that a mark which is "merely descriptive" of the goods to which the applicant has applied it is not being used by him *as a trademark* for those goods and hence, in that use, *is not a trademark.* * * *

By the same token, to the extent that a descriptive mark other than the generic or common descriptive name of the goods can and has "become distinctive" of the the goods in commerce or, in trademark parlance, has acquired a "secondary meaning", it no longer is "merely descriptive" of them.

phrase which is directed to the character or quality of "MISS CLAIROL" hair coloring, we are not persuaded that this is, in fact, the case.

Applicant's slogan is no doubt laudatory and somewhat descriptive of the desired result to be obtained from the use of applicant's product. On the other hand, it is not so highly laudatory or descriptive as to be incapable of acquiring distinctiveness as a trademark. * * * [Emphasis supplied.]

While Roux does not challenge the registrability of slogans on the principal register as a general proposition, it does criticize the board's extensive, if not exclusive, reliance on Clairol's advertising campaign for its "Miss Clairol" product as circumstantial evidence establishing that the slogan is a trademark and has become distinctive of the goods in the public eye. Typical of Roux's variously-stated views are the following excerpts from its brief:

* * * That the material submitted failed to indicate any distinctiveness will be pointed out, but it is believed that the phrase is so totally laudatory and descriptive that it could not have acquired any distinctiveness even if proof of trademark use had been submitted.

* * * * * *

No amount of money spent in advertising can change the inherent nature of this phrase and make it anything other than a generic advertising statement which merely describes the product. It is not an indication of origin.

The law provides for the registration of trademarks, not of advertisements.

* * * * * *

Use of a trademark in extensive advertising may, of course, be used as one type of evidence tending to show that a trademark has been widely used and has become recognized. It must, however, be a trademark and used as a trademark. * * *

The attempt to establish distinctiveness omitted any proof of trademark use or recognition of the phrase in question as a trademark.

* * * * * *

* * * Examination of the many advertisements, submitted in connection with the file wrapper and in the exhibits submitted with appellee's stipulated facts, does not indicate, or even tend to establish, that HAIR COLOR SO NATURAL ONLY HER HAIRDRESSER KNOWS FOR SURE was used as a trademark or is capable of functioning as such. True, in many of these advertisements, the phrase is prominently displayed. Mere size, however, does not change the obvious fact that the phrase describes and points to the claimed virtues of the hair coloring preparation sold as MISS CLAIROL and not to any HAIR COLOR SO NATURAL ONLY HER HAIRDRESSER KNOWS FOR SURE hair coloring preparation. Such a product, bearing the phrase here involved, was not available on the market at any time (except for the single shipment) and, even as to that, the phrase could have been only generically descriptive and would not have been recognized as a trademark.

The claim that extensive advertising cost indicates distinctiveness of this phrase ignores the fact that the advertising is for the MISS CLAIROL hair color bath. * * *

█ The determination of whether a given slogan is a registrable trademark is a matter which historically has not been free of difficulty.[9] Nor is it an easy task here. The mere fact that a combination of words or a slogan is adopted and used by a manufacturer with the intent Clairol has manifested here— that it identify its goods and distinguish them from those of others—does not necessarily mean that the slogan accomplishes that purpose in reality. See In

9. See, for example, Beran, Protection of Slogans in the Patent Office and the Courts, 57 TMR 219 (1967), and the chronology of cases discussed therein.

re Standard Oil Co., 275 F.2d 945, 47 CCPA 829 (1960).

■■ The amount and character of the evidence, if any, required to establish that a given word or phrase is a trademark or "has become distinctive" of the goods necessarily depends on the facts of each case and particularly on the nature of the alleged mark. At the outset, as noted earlier, it is not clear to us that Clairol's preliminary contention that the slogan is a fanciful, arbitrary, or even highly suggestive expression which, without more, presumptively functions as a trademark to indicate origin is necessarily correct. On the other hand, we do disagree with Roux's position, as did the board, that the slogan is so highly descriptive or generic that it is utterly incapable of functioning as a trademark or acquiring distinctiveness, no matter what quantity of evidence of alleged distinctiveness or secondary meaning is submitted. It is true, of course, that mere advertising or other evidence of supposed secondary meaning cannot convert something unregistrable by reason of its being the common descriptive name or generic name for the goods—the antithesis of a trademark—into a registrable mark. In re G. D. Searle & Co., 360 F.2d 650, 53 CCPA 1192 (1966); Weiss Noodle Co. v. Golden Cracker & Specialty Co., 290 F.2d 845, 48 CCPA 1004 (1961); J. Kohnstam, Ltd. v. Louis Marx & Co. et al., 280 F.2d 437, 47 CCPA 1080 (1960). That does not mean that extensive advertising considered with other factors cannot be used to show a developed distinctiveness in a mark perhaps originally having some degree of descriptive significance when applied to the goods but capable of distinguishing them from those of others.[10] See Standard International Corp. v. American Sponge & Chamois Co., 394 F.2d 599, 55 CCPA 1155 (1968); Clinton Detergent Co. v. The Procter & Gamble Co., 302 F.2d 745, 49 CCPA 1146 (1962). Considering all the factors here—exclusive, prominent

and repeated use of the slogan by Clairol for at least ten years in association with the goods, expenditures in that period of over 22 million dollars for point-of-sale displays and other advertising material resulting in over a billion separate audio and visual impressions of the slogan, and substantial sales of the product with which the slogan has been associated— we do not think the board erred in concluding that Clairol's slogan has made an impact upon the purchasing public as an indication of origin, separate from and in addition to the impact of its "Miss Clairol" mark. See In re Hollywood Brands, Inc., supra.

■ In our view, Roux has not shown such an interest in the use of the particular slogan in issue in its business that damage to it will be presumed from registration by Clairol. It is apparent that the slogan is not in common use by Roux or others to describe the same or similar products, Clairol having used it exclusively for a number of years. Nor is it one that Roux finds or might find necessary to describe the features of its product in the ordinary course of business, the record showing that Roux has used several other descriptive expressions of somewhat similar import in its advertising copy to describe similar attributes of its goods. We agree with the board, as does Clairol, that damage to Roux cannot ensue from registration of the instant slogan inasmuch as that slogan is not merely descriptive and its registration will not prevent the continued use by Roux in its advertising of descriptive phrases like those it has used in the past. 15 U.S.C. § 1115(b) (4); In re Chesapeake Corp. of Virginia, 420 F.2d 754, 57 CCPA (1970); In re Automatic Radio Mfg. Co., 404 F.2d 1391, 56 CCPA 817 (1969).

One matter remains. We have assumed heretofore that the slogan has been used on the goods in commerce as defined in § 45 of the Act, 15 U.S.C. §

10. The size of advertising expenditures alone has been found to serve as strong evidence of secondary meaning. Good-

year Tire & Rubber Co. v. H. Rosenthal Co., 246 F.Supp. 724 (D.C.Minn.1965).

1127. As noted by the board, however, Roux argued below that Clairol is not entitled to registration because, as shown by its stipulated testimony, it made only a *single* shipment of goods in commerce bearing the slogan (the slogan appeared on the cardboard containers in which glass bottles containing Clairol's hair coloring preparations were placed) prior to the filing of its application in 1962, and it has *not* used the slogan on its *containers* since that time.[11] Here, Roux embellishes on that argument, adding that there obviously "was no intent to continue use of the phrase on the package, the use was not continued, and there has been no suggestion of any such intent." It seems to be Roux's position that, even were the slogan otherwise capable of being a trademark, Clairol nevertheless has not made bona fide *use* of it *on its goods* in commerce—at least on its *containers* for the goods [12]—adequate to support a registration, and thus is not an "owner of a trademark used in commerce." 15 U.S.C. § 1051; cf. Fort Howard Paper Co. v. Kimberly-Clark Corp., 390 F.2d 1015, 55 CCPA 947 (1968), cert. denied 393 U.S. 831, 971, 89 S.Ct. 99, 21 L.Ed.2d 101.

Whatever the merits of Roux's stance may be with respect to Clairol's use of the slogan on containers, the board correctly observed that § 45 of the Act provides other means by which a mark may be used on goods in commerce than on their containers, viz. that a mark shall be deemed to be used in commerce on goods "when it is placed in any manner * * * *On the displays associated therewith* * * * and the goods are sold or transported in commerce." [Emphasis supplied.]

On that point, Roux urges the board erred in concluding that Clairol's use of its slogan has fully complied with that provision of § 45. There is no suggestion in the evidence, Roux argues, that the point-of-sale display cards on which Clairol placed its slogan were actually used in association with the goods. It further contends:

That the language used in the definition in section 45 requires something more than a mere advertisement and necessarily must consist of something directly associated with the goods is apparent both from the language of the statute and the nature of trademark use. Otherwise, any advertisement which might be displayed in a shop would constitute trademark use.

However true the latter contention may be,[13] Roux's argument consistently overlooks paragraph 11 of Clairol's stipulated testimony [14] and its accompanying photographic exhibits, particularly exhibit

---

11. While the board, curiously enough, characterized the question raised by Roux as "ex parte in nature" even though it was pleaded in paragraph 10 of the Notice of Opposition, its decision on the matter appears to have been inter partes, perhaps in deference to this court's repeated admonitions not to render separate ex parte rulings in certain inter partes situations. See Fort Howard Paper Co. v. Kimberly-Clark Corp., infra; Golden Gate Salami Co. v. Gulf States Paper Corp., 332 F.2d 184, 51 CCPA 1391 (1964); Roger & Gallet v. Janmarie, Inc., 263 F.2d 350, 46 CCPA 787 (1959); Gillette Co. v. George P. Kempel, 254 F.2d 402, 45 CCPA 920 (1958). Neither party questions our right to pass on the issue here, both having developed their arguments fully in their briefs.

12. The record does show that Clairol has included the slogan on the direction sheet packed in each container of its "Miss Clairol" hair tint products since about March 1965.

13. See Powermatics, Inc. v. Globe Roofing Products Co., Inc., 341 F.2d 127, 52 CCPA 950 (1965).

14. That paragraph reads:
    11. Applicant's Exhibit 5 accompanying this stipulation is a collection of point-of-sale displays for the Miss Clairol Hair Color Bath hair tints, which show the slogan here opposed. Such displays have been prepared and distributed by applicant and its predecessor from time to time during the period from May 1956 to the present. Each such distribution has involved large quantities of the display pieces concerned, in the tens of thousands for each distribution. Such distributions have covered beauty salons and retail

items 5L2–5L4 and 5M. Those items, among others, were stipulated to be "typical of the many different displays of the same general character which were distributed to and displayed and used in beauty salons and retail stores" during the period 1956 to 1966, and do in fact show the slogan prominently used on relatively large counter or window display cards of the stand-up type in close association with the goods. Like the board, we are satisfied that Clairol's use of the slogan in the aforementioned stipulated manner, though a use in a form of advertising to be sure, is nevertheless a use on "displays associated" with the goods and satisfies the provisions of § 45. See In re E. Kahn's Sons Co., 343 F.2d 475, 52 CCPA 1201 (1965).

In conclusion, then, although Clairol's slogan has been used in connection with the sale of its hair coloring preparations in a promotional advertising manner and may have some descriptive connotation with respect to them, at the same time we think it has come, by virtue of its use in extensive advertising together with its use in commerce on displays associated with the goods, to serve as a means by which the public can identify the goods as those from a particular source and can distinguish those goods from those of others. It has "become distinctive" of those goods. That being the case, it performs the basic function of a trademark as set forth in the Trademark Act and as commonly understood.

The decision of the board is affirmed.

Affirmed.

outlets throughout the country, and *the items so distributed have been and are being displayed in such salons and retail outlets, where the Miss Clairol hair tints have been and are being used and sold.* The copyright notice years shown on various items in Applicant's Exhibit 5 identify the respective years when the items were first distributed. The point-of-sale displays which comprise Applicant's Exhibit 5 are identified in the list which is Applicant's Exhibit 5–A. *Such displays are only a few examples which are typical of the many different displays of the same general character which were dis-* *tributed to and displayed and used in beauty salons and retail stores.* During the period from May 1956 to the present there have been more than fifty (50) distributions of point-of-sale display pieces of these types, each of them prominently displaying the slogan here opposed:

HAIR COLOR SO NATURAL ONLY HER HAIRDRESSER KNOWS FOR SURE

The total number of all such point-of-sale pieces which have been distributed down to the present exceeds three million (3,000,000). [Emphasis supplied.]