Application of **KOPY KAT, INC.**
Patent Appeal No. 9252.

United States Court of Customs
and Patent Appeals.

July 3, 1974.

Andrew R. Klein, Philadelphia, Pa.
(Synnestvedt & Lechner, Philadelphia,
Pa.), attorney of record, for appellant.

Joseph F. Nakamura, Washington, D.
C., for the Commissioner of Patents; R.
V. Lupo, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and ALMOND, Senior Judge.

RICH, Judge.

This appeal is from the affirmance by the Patent Office Trademark Trial and Appeal Board [1] of the ex parte rejection of an application, serial No. 331,626, filed July 2, 1969, to register on the Principal Register the service mark reproduced below for "rendering advice and assistance in connection with the establishment and/or operation of printing businesses." [2] We reverse.

"WE PRINT-IT IN A MIN-IT"

The examiner rejected the application on the following two grounds, both affirmed by the board: (1) that the expression "WE PRINT–IT IN A MIN–IT" is merely descriptive within the meaning of section 2(e)(1) of the Trademark Act (15 U.S.C. § 1052(e)(1)) and therefore must be disclaimed in accordance with section 6 (15 U.S.C. § 1056), which appellant refused to do; and (2) that the subject matter is confusingly similar to the subject matter of Registration No. 868,509, within the meaning of section 2(d) (15 U.S.C. §

1052(d)), which subject matter is as follows:

This mark was registered on April 22, 1969, to Copy Cat Educational Services, Inc., of Cambridge, Mass., as a service mark. The services named are "GRAPHIC REPRODUCTION SERVICES."

### OPINION

*The Slogan Portion of the Mark*

We do not agree that the slogan, "WE PRINT–IT IN A MIN–IT," falls within section 2(e)(1) which provides, in relevant part, that registration shall not be granted of a mark "which, (1) when applied to the goods of the applicant is merely descriptive * * * of them." These words were written, of course, with respect to trademarks but in view of section 3 (15 U.S.C. § 1053), which states that service marks are registrable subject to the provisions relating to the registration of trademarks, the word "goods" must be read as comprehending services.

As appellant has pointed out, the Patent Office has produced nothing to show that the slogan describes any services or has ever been used by anyone before. It is merely the opinion of the examiner and the board that the slogan is "merely descriptive," which is, in our judgment, a question of law. The slogan is, ob-

1. Abstracted at 178 USPQ 64, decided March 7, 1973.

2. The amended application, in addition to this recitation of appellant's services, contains the following paragraph:
   The mark is also used to identify printing services rendered by related companies, each of which is controlled with respect to the nature and quality of the services with which the mark is used by reason of a license agreement issued by applicant, and by reason of advisory and supervisory services furnished pursuant thereto by applicant.

viously, highly suggestive of speed with respect to some kind of printing service, but one cannot tell what kind. It could be printing photographs, or printing with type, or making photostatic, xerographic, lithographic, photo offset, or other copies. The slogan is a rhyming couplet and distinctive in its use of hyphens in "PRINT–IT" and "MIN–IT" and the misspelling of the latter.

The solicitor would have us disregard peculiarities of spelling and hyphenation and treat the slogan simply as saying "we print it in a minute." Then he argues:

It is obviously of no consequence what specific type of printing service might be identified with the mark. The slogan simply says what it says—no more, no less—and its clear meaning is merely descriptive of the services because it identifies the services rather than identifying the source of those services.

We do not agree that the slogan identifies the services. We think it is clear from mere inspection why it does not, even when viewed as the solicitor would have us view it.

Appellant cited to the board a number of cases, which neither the board nor the solicitor has mentioned. We think they are in point. They include: American Enka Corp. v. Marzall, 92 USPQ 111 (DC DC 1952), wherein the court disapproved the refusal to register a composite mark including the slogan "THE FATE OF A FABRIC HANGS BY A THREAD" for rayon yarn unless the slogan was disclaimed; Ex parte Robbins & Myers, Inc., 104 USPQ 403 (Commr.Pats.1955), in which "Moving Air is Our Business" for electric fans was held registrable on the Principal Register; Ex parte Redmond Co., 117 USPQ 484 (Commr.Pats.1958), in which "THE BIG NAME IN SMALL MOTORS" for electric motors was held registrable; and In re Joseph Bancroft & Sons Co., 129 USPQ 329 (TTAB 1961),

wherein "THE TEST IS IN THE TOUCH" for knitted underwear, outerwear, and hosiery was held registrable although the board said that the slogan "may, in effect, recite a factor to be considered in making a determination of quality merchandise." To these cases we add our recent decision in Roux Laboratories, Inc. v. Clairol Inc., 427 F.2d 823, 57 CCPA 1173 (1970), holding, inter alia, that the slogan "Hair Color So Natural Only Her Hairdresser Knows for Sure" for hair dye is not "merely descriptive" under section 2(e)(1). For additional cases, see "Slogans—Tests as Trademarks," by Cameron K. Wehringer, 52 JPOS 781 (1970). Under these precedents, appellant's slogan has the capacity to identify appellant's services and distinguish them from the services of others.

■ Since the slogan portion of appellant's composite mark is not merely descriptive of appellant's services, it was improper for the examiner to require its disclaimer on that ground, from which it follows that the rejection predicated on the refusal to disclaim was in error.

### The Issue of Confusing Similarity

■■ The issue under section 2(d) as to whether concurrent use of appellant's mark and the mark of the reference on the services named in the application and registration, respectively, would be likely to cause confusion or mistake or to deceive, must be adjudged by comparison of the marks as a whole. The solicitor agrees with this principle and observes, correctly, that this is a subjective determination. We think that the two marks are so utterly different in appearance that, from that standpoint, there is not the slightest likelihood of confusion, mistake, or deception. Being design marks, that is the main consideration.

■ The only thing the two marks have in common is what might be termed the copy cat theme. "Copy-cat"

is a well-known dictionary term—a part of commonplace speech—meaning an imitator or one who copies slavishly. The reference registrant employs these words in its composite mark in setting forth its trade name, Copy Cat Educational Services Inc., and includes them again, very inconspicuously, on the picture on the easel. Nothing in the mark itself or the registration document indicates that the registrant claims any trademark or service mark rights in the *words* "Copy Cat." Registrant's development of the theme is utterly different from appellant's development. We do not feel that the reference registrant, by virtue of the registration, has exclusive rights with respect to every development of the theme or every use of the words. We agree with appellant that its composite mark is about as different from the registered mark "as two cat caricatures could possibly be made to be." As for the words themselves, appellant has used a different spelling and distinctive typography.

In the final analysis, the question is whether the language of section 2(d), "*so* resembles a mark registered in the Patent Office * * * *as to be likely*, when applied to the goods [services] of the applicant, to cause confusion, or to cause mistake, or to deceive" (our emphasis), compels the Office to refuse registration. We think it does not, on the basis of our consideration of all aspects of the marks as a whole and the probable reaction thereto by the purchasing public.

The decision of the board is reversed.

Reversed.

ALMOND, Senior Judge, dissenting, with whom BALDWIN, Judge, joins.

I would affirm the decision of the Trademark Trial and Appeal Board.

With respect to the slogan portion of the mark, it is pertinent to point out that the printing business to which the service mark is applicable is a photolithographic printing service. Furthermore, that the service to be rendered under the mark is a high speed one is obvious from the record. In view of these facts and the common usage of the word "minute" to connote a period of time of brief span, I regard the slogan as being a phrase, albeit a catchy one, that is descriptive of the service to be rendered.

That such a phrase might be applicable to other high speed reproduction services is stressed by the majority. I personally doubt that rapid photo print and type setting services would ever advertise that they could "print it in a minute." Nevertheless, that the slogan is applicable to more than one kind of printing service seems to me irrelevant particularly in view of the description of the service defined in the application as having to do with "printing businesses." That term would no doubt encompass most, if not all, of the printing services recited by the majority.

I would also affirm the board's decision regarding the issue of likelihood of confusion. The majority acknowledges that the marks share a common "copy cat theme." I personally would agree that there is little or no likelihood that customers would confuse the marks. However, we must address the broader question which is whether the marks will confuse customers. See, e. g., In re West Point-Pepperell, Inc., 468 F.2d 200 (Cust. & Pat.App.1972).

I believe that persons are used to seeing a common trademark theme in different formats and associating them with the same source. In this regard, see Planters Nut & Chocolate Co. v. Crown Nut Co., 305 F.2d 916, 50 CCPA 1120 (1962). In the instant case, each mark employs caricatures of cats in a design mark for related services. I think that there exists the likelihood that users of these services would be confused by being led to believe that the marks indicate a common source for related services.