This Opinion is a Precedent
of the TTAB

Mailed: August 28, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*In re Joseph A. Stallard*
_____

Serial No. 97115036
_____

Joseph A. Stallard dba Osgoode Media, *pro se.*

Jasmine Soriano, Trademark Examining Attorney, Law Office 129,
Pam Willis, Managing Attorney.
_____

Before Taylor, Shaw and English,
Administrative Trademark Judges.

Opinion by Shaw, Administrative Trademark Judge:

Joseph A. Stallard dba Osgoode Media ("Applicant") seeks registration of the

proposed design mark,  , on the Principal Register for

goods identified as:

Computer game programmes downloadable via the Internet; Computer game software downloadable from a global computer network; Computer games programmes downloaded via the internet; Downloadable computer game programmes; Downloadable computer game programs; Downloadable computer game software; Downloadable computer game software for personal computers and home video game consoles; Downloadable computer game software for use on mobile and cellular phones; Downloadable computer game software via a global computer network and wireless devices; Downloadable game software; Downloadable video game programs; Downloadable video game software; Downloadable electronic game software; Downloadable electronic game software for cellular telephones; Downloadable electronic game software for handheld electronic devices; Downloadable electronic game software for wireless devices; Downloadable interactive game software; Downloadable interactive multimedia computer game programs; Downloadable video and computer game programs, in International Class 9.[1]

The description of the mark states: "The mark consists of a woman video game character named Maria, with a tilted head, dark messy hair, dark eyes, thin rimmed glasses and a large toothy smile, with her eyes looking to the side and strands of her hair in front of her eyes." Color is not claimed as a feature of the mark.

The Trademark Examining Attorney refused registration of Applicant's mark on the ground that it fails to function as a mark under Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052 and 1127, because consumers would perceive

---

[1] Application Serial No. 97115036 was filed on November 9, 2021 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging a date of first use anywhere and in commerce of May 9, 2017.

All TTABVUE and Trademark Status and Document Retrieval ("TSDR") citations reference the docket and electronic file database for the involved application. All citations to the TSDR database are to the downloadable .PDF version of the documents.

it only as identifying a character in Applicant's video games, and not as a source indicator for Applicant's goods.

When the refusal was made final, Applicant appealed. The case is fully briefed. We affirm the refusal to register.

## Failure to function as a mark

Section 45 of the Trademark Act defines a "trademark" as "any word, name, symbol, or device, or any combination thereof – (1) used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. "[A] proposed trademark is registrable only if it functions as an identifier of the source of the applicant's goods or services." *In re Yarnell Ice Cream, LLC*, 2019 USPQ2d 265039, at *16 (TTAB 2019) (quoting *In re DePorter*, 129 USPQ2d 1298, 1299 (TTAB 2019)); *see also In re Vox Populi Registry, Ltd.*, 25 F.4th 1348, 2022 USPQ2d 115, at *2 (Fed. Cir. 2022) (holding the same for service marks). It is well settled that not every designation that is placed on or used for a product necessarily functions as a trademark for that product and not every designation adopted with the intention that it perform a trademark function necessarily accomplishes that purpose. *See, e.g., Roux Labs., Inc. v. Clairol Inc.*, 427 F.2d 823, 166 USPQ 34, 39 (CCPA 1970) ("The mere fact that a combination of words or a slogan is adopted and used by a manufacturer with the intent . . . that it identify its goods and distinguish them from those of others—does not necessarily mean that the slogan accomplishes that purpose

in reality.") (citation omitted); *accord In re Eagle Crest Inc.*, 96 USPQ2d 1227, 1229 (TTAB 2010).

As for trademark indicia that may have more than one function, there is no prohibition against registration of fictitious or fanciful "character" marks that serve a dual purpose, i.e., serve both as a character in the goods or services and as a trademark or service mark. "[M]arks can serve the dual purpose of identifying source and serving as an integral and necessary component of the goods or services to which applied." *In re Red Robin Enters., Inc.*, 222 USPQ 911 (TTAB 1984). However, in order to be registrable, the use of a fictitious or fanciful character

> [M]ust be perceived by the purchasing public not just as a character but also as a mark which identifies and distinguishes the source of the goods or services. Where the usage of a character in the specimens of record fails to impart any commercial impression as a trademark or service mark, it is not registrable as such.

*In re Hechinger Inv. Co. of Del.*, 24 USPQ2d 1053, 1056 (TTAB 1991).

Additionally, our cases hold that designations that merely identify a character in a creative work are not registrable, whether the character appears in a series or in a single work. *See, e.g.*, *In re Caserta*, 46 USPQ2d 1088, 1090-91 (TTAB 1998) (holding FURR-BALL FURCANIA, used as the principal character in a single children's book, does not function as a mark even though the character's name appeared on the cover and every page of the story); *In re Scholastic Inc.,* 223 USPQ 431, 431 (TTAB 1984) (holding THE LITTLES, used in the title of each book in a series of children's books, does not function as a mark where it merely identifies the main characters in the books); *In re Frederick Warne & Co.*, 218 USPQ 345, 347-48 (TTAB 1983) (holding an

illustration of a frog used on the cover of a single book served only to depict the main character in the book and did not function as a trademark); *see generally* TRADEMARK MANUAL OF EXAMINING PROCEDURE section 1202.10 ("TMEP") (July 2022).

"In analyzing whether a proposed mark functions as a source identifier, the Board focuses on consumer perception." *Vox Populi*, 2022 USPQ2d 115, at *2 (citations omitted); *Eagle Crest*, 96 USPQ2d at 1229 ("The critical inquiry in determining whether a designation functions as a mark is how the designation would be perceived by the relevant public."). "The Board looks to 'the [Applicant's] specimens and other evidence of record showing how the designation is actually used in the marketplace' to determine 'how the designation would be perceived by the relevant public.'" *Vox Populi*, 2022 USPQ2d 115, at *2-3 (quoting *Eagle Crest*, 96 USPQ2d at 1229); *see also Caserta*, 46 USPQ2d at 1090 ("[T]he sole issue is whether the name of the fictitious character is *used* in such a manner that it is likely to be perceived as a trademark in connection with the identified goods.").

Applicant's goods are video and computer game programs. The mark comprises an image of the cropped head of a video game character, "Maria," in the game "Target of Desire: Episode 1." According to Applicant, "Maria is a main character in the video game[.]"[2] Applicant's sole specimen, below, is an excerpt from a third-party webpage, Itch.io, which is, according to Applicant, "an electronic retail store for video games."[3]

---

[2] Applicant's Br., p. 3, 4 TTABVUE 5.

[3] Application of November 9, 2021; Stallard dec., ¶ 3, April 27, 2022 response to office action, TSDR 14-15.



The webpage excerpt specimen includes the following brief description of Maria: "Maria is a cryptic character. The only thing that she reveals about herself is that she 'works at the University.' She blogs (and is on social media) under the username of 'IamNamedMaria', where she speculates about the nature of reality." The complete webpage from Itch.io, introduced by the Examining Attorney, appears below.

Serial No. 97115036



---

4 Final Office Action of July 18, 2022, TSDR 2.

As can be seen from the page above, the complete webpage includes the excerpted portion submitted by Applicant as his specimen, as well as additional game images and information. The center of the webpage comprises a column with information about the game, including a description, images, and links to Google Play and Amazon, where the game may be downloaded. The complete webpage includes images and discussion of an additional game character named "Maia." The webpage provides the following brief summary of the game's premise:

### Target of Desire: Episode 1

What happens when a video game character is self-aware?

Target of Desire follows the stories of Maia and Maria.

Maia is a video game character, who is followed by men in suits, everywhere she goes, and she doesn't know why. She fights for survival while trying to solve her mystery and understand her reality.

Behind the central informational column is a repeating background with images of the Maia and Maria characters. The Maia character appears six times on the webpage, in a total of five different poses. The Maria character appears three times on the page—in a single pose—including in the image comprising the mark, i.e., her head cropped from the single pose. There is no evidence that Applicant has released additional game episodes.

The Examining Attorney also introduced one webpage from Google.com, and two webpages from Amazon.com, from which Applicant's game can be downloaded.[5] None of these pages show the Maria character, however these pages include several images of the Maia character in poses similar to those shown above.

---

[5] *Id*. at TSDR 3-5.

The Examining Attorney argues that "the usage of the proposed mark in the specimen of record fails to impart any commercial impression as a trademark for the Class 9 goods."[6] In particular, the Examining Attorney points out that the Maria character is neither the most prominent character, nor does she appear on all of the web sites on which Applicant's game is sold:

> [T]he proposed mark is one character in Applicant's game, and different images of other characters, i.e., MAIA, appear when users are redirected to the links to purchase the game on Google Play and Amazon, and the written information in the specimen makes clear that the proposed mark is merely a character. In fact, the proposed character mark does not even appear on the Google Play and Amazon webpages. On the Google Play and Amazon webpages, not only is another character design featured next to the title, but under the heading "PRODUCT FEATURES" and "ABOUT THIS ITEM" it expressly states "YOU CAN'T CONTROL MAIA". Additionally, the proposed character mark is the second character to appear on the Itch.io webpage provided as a specimen.[7]

According to the Examining Attorney, "the specimen coupled with the evidence on record shows the applied-for mark is used only to identify a character, and not as a source indicator for Applicant's goods."[8] Further, Applicant's intent is irrelevant:

> [T]he mere fact that the proposed mark appears on the specimen of record does not make it a trademark. . . . Nor is Applicant's intent alone that the proposed character mark function as a trademark sufficient. . . . The specimen must show that the mark functions as a trademark to be registrable.[9]

---

[6] Examining Attorney's Br., p. 8, 8 TTABVUE 9.

[7] *Id*. at 9, 8 TTABVUE 10.

[8] *Id*. at 5, 8 TTABVUE 6.

[9] *Id*. at 6, 8 TTABVUE 7.

In response, Applicant argues that the Office improperly applies a stricter standard of examination to marks comprising characters than other marks. Specifically, Applicant argues that the language in TMEP section 1202.10, "Marks that *merely* identify a character in a creative work [] are not registrable," "is misleading, at best, and examiners interpret it as a rigid bright-line rule."[10] Applicant states that such a "bright-line rule against characters as trademarks has no basis in the statute or case law."[11] Instead, Applicant argues, any display of the character on the specimens suffices to show use as a trademark because "the law is the applicant can use the Maria mark 'in any manner' on the display."[12] Thus, according to Applicant, his mark functions as a trademark regardless of how it appears on the specimens:

> Video game characters are inherently associated with their video game, and the Examining Attorney did not contend that Maria is not associated with the video game. Thus, the Maria mark is associated with the goods, and the specimen shows the Maria mark "placed in any manner" on a display for those goods.[13]

We disagree with Applicant both that the Office employs a bright-line rule against the registration of characters, and that characters inherently function as trademarks, regardless of how they appear on the specimens. Video game characters are not per se registrable without a showing that they function as marks.

---

[10] Applicant's Br., p. 7, 4 TTABVUE 9.

[11] *Id.*

[12] Applicant's Reply Br., p.5, 9 TTABVUE 7.

[13] Applicant's Br., p. 6, 4 TTABVUE 8.

"Not every single word, phrase, design or picture that appears on a label, webpage or in an advertisement qualifies as a protectable mark[.]" 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 3:4 (5th ed. 2023); *see also In re Aerospace Optics,* 78 USPQ2d 1861, 1862 (TTAB 2006) ("The mere fact that a designation appears on the specimens of record does not make it a trademark."). "The Trademark Act is not an act to register mere words [or other indicia], but rather to register trademarks. Before there can be registration, there must be a trademark, and unless words [or other indicia] have been so used they cannot qualify." *In re Bose Corp.*, 546 F.2d 893, 192 USPQ 213, 215 (CCPA 1976). "[T]he manner in which an applicant has employed the asserted mark, as evidenced by the specimens of record, must be carefully considered in determining whether the asserted mark has been used *as a trademark* with respect to the goods named in the application." *Id.* at 192 USPQ 216.

Here, the Examining Attorney refused registration, but not because there is a strict or bright-line rule against registration of characters. That is not the law. *See, e.g.*, *In re DC Comics, Inc.*, 689 F.2d 1042, 215 USPQ 394, 396 (CCPA 1982) (in a case involving drawings of superhero characters for toy dolls, court rejected the proposition that "a picture of a product necessarily cannot function as a trademark for that product"). Rather, the refusal was based on a finding that "[t]he proposed character mark, **as used on the specimen of record**, identifies only a particular character in a creative work, and it does not function as a trademark to identify and distinguish Applicant's goods from those of others and to indicate the source of

Applicant's goods."[14] That is, consumers will perceive the applied-for mark only as a character in Applicant's game, not as a trademark.

We agree with the Examining Attorney that the record does not show that the public would perceive the mark as an indication of the source of the game such that it functions as a trademark. The evidence shows that the proposed mark is merely associated with one character in the game, and it is not used in a way to identify and distinguish the source of the game itself—for example, on the game's launch screen or more prominently on the webpage, such as in the header of the page. *See e.g.,* TMEP § 904.03(e) ("Specimens for Trademarks Identifying Downloadable or Recorded Computer Programs, Movies, and Videos, or Audio Recordings") and cases cited therein:

> The computer program, video, and movie industries have adopted the practice of applying trademarks that are visible when the goods, that is, downloadable or recorded computer programs or movies, are displayed on a screen (e.g., on the first several frames of a movie).
>
> An acceptable specimen might be a photograph or screen shot of a computer display screen projecting the identifying trademark for a downloadable or recorded computer program, or a photograph of a frame(s) of a movie or video bearing the mark.
>
> * * *
>
> For downloadable computer software, an applicant may submit a specimen that shows use of the mark on an Internet website. **Such a specimen is acceptable only if it creates an association between the mark and software**[.] (Emphasis added).

---

[14] Examining Attorney's Br., pp. 3-4, 8 TTABVUE 4-5 (emphasis added).

As demonstrated by the Examining Attorney's complete webpage from Itch.io, from which Applicant's specimen was excerpted, the sole use of the proposed mark is mid-way down the page, below four images of the game's other character, Maia, and below a three-sentence description of Maria. This positioning of the proposed mark, buried below text in the middle of the webpage, suggests that the image merely serves an informational function to familiarize prospective consumers with one of the two main characters of the game. Simply put, prospective consumers viewing the proposed mark on the webpage would have no reason to think that the cropped image of Maria's head identifies the source of the goods. *See In re Greenwood*, 2020 USPQ2d 11439, at *2 (TTAB 2020) ("Matter that does not operate to indicate the source or origin of the identified goods . . . and distinguish them from those of others does not meet the statutory definition of a trademark and may not be registered [.]") (quoting *In re AC Webconnecting Holding B.V.*, 2020 USPQ2d 11048, at *2-3 (TTAB 2020)). *See also In re Texas With Love, LLC*, 2020 USPQ2d 11290, at *2-3 (TTAB 2020) (quoting *In re Pro-Line Corp.*, 28 USPQ2d 1141, 1142 (TTAB 1993) ("Mere intent that a phrase function as a trademark is not enough in and of itself to make it a trademark.")).

Applicant also contends that TMEP section 1202.10 is inapplicable because it "only provides guidance for character *names*,"[15] not different kinds of marks such as design or image marks. In other words, according to Applicant, "Regular images [do] not require this additional information [showing use of a mark to identify and

---

[15] Applicant's Reply Br., p. 2, 9 TTABVUE 4.

distinguish the source of the goods] for registration as a trademark."[16] We disagree with this characterization as well. The language in section 1202.10, "[m]arks that merely identify a character in a creative work," encompasses any matter that identifies a character, including names, designs, images, nicknames, and the like. Regardless, Applicant is wrong that images do not have to be used to identify and distinguish the source of the goods in order to be registered as a trademark. As discussed above, only matter that identifies and distinguishes the source of goods meets the statutory definition of a trademark, and only trademarks may be registered on the principal register.

Lastly, Applicant faults section 1202.10 because "[i]t does not explain how the applicant could overcome the refusal of the Maria mark."[17] Contrary to Applicant's argument, section 1202.10 includes the following advice to Applicants:

> To overcome a refusal of registration on the ground that the proposed mark merely identifies a character in a creative work, the applicant may submit evidence that the character name [or image] does not merely identify the character in the work. For example, the applicant may submit evidence showing use of the character name [or image] as a mark on the spine of the book, or on displays associated with the goods, **in a manner that would be perceived as a mark**. (Emphasis added).

As noted above, Applicant could have submitted other material discussed in TMEP section 904.03(e) showing use of the proposed mark in a manner that would be perceived as a mark for the game as a whole. Indeed, the Final Office Action of

---

[16] *Id.* at 1, 9 TTABVUE 3.

[17] *Id.* at 2, 9 TTABVUE 4.

July 18, 2022 advised Applicant that he could submit substitute specimens, or amend the application to change the application's filing basis to intent to use,[18] but Applicant chose not to do so.

For the foregoing reasons, we affirm the refusal to register the proposed mark on the ground that it fails to function as a mark under Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052 and 1127.

**Decision**: The refusal to register Applicant's proposed mark on the ground that it fails to function as a trademark is affirmed.[19]

---

[18] Final Office Action of July 18, 2022, TSDR 3.

[19] In a motion for permission to raise a new claim, filed on July 25, 2023, Applicant requests that the "Board "set aside Trademark Manual of Examining Procedure (TMEP) § 1202.10 as unlawful and remove it from the TMEP." 12 TTABVUE 2.

Applicant's motion is denied. The refusal to register Applicant's mark is based on Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052 and 1127, as well as on Board and Federal court precedent, not on TMEP section 1202.10. To the extent that this decision discusses the TMEP, it only does so to summarize Office practice in examining marks as instructed by Trademark Act, Federal rules, and case law. As noted in the foreword to the TMEP, the manual provides guidelines:

> Trademark Examining Attorneys will be governed by the applicable statutes, the Trademark Rules of Practice, decisions, and Orders and Notices issued by the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, Commissioners, or Deputy Commissioners. **The guidelines set forth in this Manual do not have the force and effect of law.** They have been developed as a matter of internal office management and are not intended to create any right or benefit, substantive or procedural, enforceable by any party against the office. [Emphasis added].