47 CCPA.

**J. KOHNSTAM, LTD.**

v.

**LOUIS MARX AND COMPANY, Inc., and Linemar Co., Inc.**

**Patent Appeal No. 6503.**

United States Court of Customs and Patent Appeals.

June 29, 1960.

---

438

Abraham A. Saffitz, Washington, D. C. (Emanuel R. Posnack, New York City, of counsel), for appellant.

James & Franklin, New York City (Maxwell James, New York City, of counsel), for appellees.

[1.] United States District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge*

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge C. WILLIAM KRAFT, Jr.[1]

RICH, Judge.

This appeal is from the decision of the Assistant Commissioner of Patents affirming the decision of the Examiner of Interferences which sustained an opposition to the registration of " 'Matchbox' Series" on the Principal Register as a trademark for "toy model vehicles and toy model machines."

J. Kohnstam, Ltd., a British corporation of London, England, filed an application to register the mark on April 21, 1955, serial No. 685,985, claiming first use April 1, 1954. Louis Marx & Company, Inc. and Linemar Co., Inc. joined to oppose the registration, alleging that they would each be damaged thereby. The Notice of Opposition was filed April 16, 1956.

The parties took no testimony but entered into two stipulations as to what their respective witnesses, if called, would testify. Numerous exhibits accompany the stipulations. Dealing at full arm's length, neither party admits the "correctness or truth" of any of the other's stipulated evidence, but neither contradicts the other so, perforce, we proceed on the basis that the facts are as shown by the stipulated evidence, at least for the purposes of this case.

The basis of the opposition is that in the context of its use the term "Matchbox" is descriptive opposers' position being well summed up in these excerpts from the conclusion of their brief:

> What *Opposer* is seeking, is to thwart applicant's attempt to take away part of the English language which was always deemed to be in the public domain. * * * All who want to sell miniature toys in a matchbox should be free to do so, and all who *do* so should have the right to *say* so.

*O'Connell*, pursuant to provisions of Section 292(d), Title 28 U.S.C.

■ According to applicant-appellant's evidence, it has sold in this country from April 1, 1954 to October 31, 1956 about 2,410,000 units of toy model vehicles and machines including: "steamroller, dump truck, cement mixer, tractor, double decker bus, tipping lorry, milk delivery cart, caterpillar tractor, fire engine, open trailer truck, gasoline truck, jeep, tow truck, ambulance, lorry, trailer for lorry, moving van, bulldozer, M. G. sports car, open truck, long distance bus, coupe, house trailer, [and] mechanical shovel." These toys are packaged in little boxes made to look like the common slide-drawer type of box used with wooden safety matches, except that they do not have slide drawers but tuck-flap ends, the boxes being 2¼″ long. The simulation of matchboxes is carried to the extent of using yellow labels on the front and back, printed in red and black ink, coloring the ends and one side dark blue, and coloring one side reddish brown to look like the usual safety-match striking surface containing red phosphorous. On the matchbox labels the words " 'Matchbox' Series" extend arcuately across the top and the words "A Moko Lesney Product" extend across the bottom, in between which is a picture of the item contained within, together with its number in the form "No. ——" on either side of the picture.

With two exceptions, the toys themselves do not bear any marking, the exceptions being a double-decker bus on the side of which, where advertising is usually carried on London trams, are the words "Buy 'Matchbox' Series," and a moving van on the side panels of which are the words "Matchbox Removals Service."

There is testimony and there are exhibits showing advertising and other kinds of promotion of the " 'Matchbox' Series" and total advertising expenditures by appellant of this series to October 31, 1956, in the total amount of $9,500, of which $7,500 was spent in the period November 1, 1955 to October 31, 1956. It will be noted that this opposition was filed in the middle of that period.

It is clear that the word-mark sought to be registered was adopted by reason of the deliberate simulation, by the packaging for the goods, of matchboxes and this is further emphasized by some of the advertising which includes such statements as "Individually packed in small multicolor Matchboxes (2¼″ long)," "Matchbox Display," and "Best of all, they're packed in these small 2¼″ matchboxes." Taking full advantage of the advertising possibilities in the word, appellant promotes the line as "The Matchless 'Matchbox' Series" "for hours of 'matchless' fun." It gave away as a promotion a "Ronson" lighter engraved "Matchless As 'Matchbox' Series."

As held by both tribunals below, the sole issue is whether the mark sought to be registered is descriptive and hence one which opposers, as members of the public, have the right to use without interference from appellant or from a registration granted to appellant.

"Matchbox" is, of course, a common English word defined by Webster's Dictionary as "A box for holding matches." A matchbox is still a matchbox if the matches are removed and a toy is put in their place. We think the word is just as descriptive of a box which is made to look as much like a matchbox as is feasible so that the toys packaged in it can appropriately be designated as a "Matchbox Series" of toys.

As further evidence of descriptiveness, in the toy merchandising field specifically, opposers' evidence shows that for nearly 5 years, from 1939 into 1943, when the war put an end to it, it marketed a "Match Box Construction Set" which was in the size and shape of a safety-matchbox with a metal drawer and a paper sleeve, also described as "The Vest Pocket Builder—100 Toys in One." Opposer also put in evidence advertising of a stranger to this proceeding, Beemak Plastics, of Los Angeles, describing certain little plastic buildings made to the scale of "Ho" gauge toy railroads, known as

"Matchbox Village" houses, stated to be packaged in unassembled condition in a "sturdy, colorful 'kitchen size' matchbox," and using a slogan reading, "You sell one * * * and the customer will buy a dozen more 'Matchbox' structures." Another item of opposers' proofs is Trade-Mark Reg. No. 366,664 issued April 25, 1939, to opposer Louis Marx & Company, Inc., of "Mar-X" and design for a large number of toys, one of the items descriptively enumerated in the certificate being "Match Box Construction Sets."

Appellant's arguments are mostly beside the point, being predicated on the apparent assumption that opposers are objecting to the registration because of some *trademark* rights which they or others have in the word "matchbox." Appellant points out at length how Beemak Plastics is no longer using the word after sporadic uses in 1952, 1953 and 1954, noting that appellant began its use thereafter. It argues that "Opposers-Appellees Have Abandoned any Trademark Rights They May Have Had," in one of the sections of its brief. These arguments can avail appellant nothing, however, because all the opposers are claiming here is the right to be free to use "matchbox" to describe toys packaged in simulated matchboxes, as they have done in the past and would like to do again.

Appellant has also argued that " 'Matchbox' Series" is not descriptive of *toys*. We give no weight to this argument for, while it may be literally true, it does not hold with respect to a series of toys sold in simulated matchboxes. The merchandise in the form in which appellant puts it on the market is aptly described as a series of matchbox toys. With respect to the container being a part of the goods, attention is called to Minneapolis Brewing Company v. Ekhardt & Becker Brewing Company, 38 USPQ 344, and cases therein referred to, wherein "steinie," having been adopted by the trade for a style of beer bottle, registration for beer was refused.

Appellant claims that its modest advertising expenditures over a period of some two and a half years have developed a secondary meaning of the term "Matchbox Series" as indicating origin of the goods in it and emhasizes that subsequent to April 1954, "there was no other use whatsoever of the word 'matchbox' in conjunction with toy articles." We will concede, arguendo, that under such circumstances, *where there is only one source* for a particular kind of merchandise over a period of time, the public might come to associate that source with the name by which the merchandise is called. But such a circumstance cannot take the *common descriptive* name of an article out of the public domain and give the temporarily exclusive user of it exclusive rights to it, no matter how much money or effort it pours into promoting the sale of the merchandise. Registration of the mark in issue would deprive opposers of the right to call matchbox toys by their name. They have the same right to do so as appellant.

Finding no error in the concurring decision below, the decision of the Commissioner of Patents is affirmed.

Affirmed.