53 CCPA

**Application of G. D. SEARLE & CO.**

**Patent Appeal No. 7604.**

United States Court of Customs and Patent Appeals.

May 12, 1966.

Joseph Schimmel, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

This is an appeal from a decision of the Trademark Trial and Appeal Board (143 USPQ 220) affirming the examiner's refusal to register the following term:

# "the pill"

Registration of the above term is sought on the Principal Register [1] as a trademark applied to "Pharmaceutical preparations in tablet form containing norethynodrel" asserted to be useful as an oral contraceptive. Exclusive right to use the word "pill" apart from the trademark as presented is disclaimed.[2]

The issue is whether the above term is registrable on the Principal Register under the provisions of the Trademark Act of 1946 (15 U.S.C. § 1051 et seq.). Appellant argues that "the pill" has become distinctive of its goods and is therefore registrable under section 2(f) of the Trademark Act of 1946 (15 U.S.C. § 1052(f)). The solicitor argues that the term is the "common descriptive name" of the *product*, an oral contraceptive, and does not in fact "distinguish Appellant's goods from the goods of others."

The Trademark Act of 1946 provides for federal registration of both "trademarks" and "marks." These terms are defined in section 45 as follows:

> *Trademark.* The term "trademark" includes any word, name, symbol, or

Walter C. Ramm, Chicago, Ill., for appellant.

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Chief Judge Worley*, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Application serial No. 142,567. First use in interstate commerce alleged as March 30, 1962.

2. The disclaimer is made on the stated condition that it "shall not prejudice to [sic] Applicant's rights in such trademark at common law."

device or any combination thereof adopted and used by a manufacturer or merchant *to identify his goods and distinguish them from those manufactured or sold by others.*

\* \* \* \* \* \*

*Mark.* The term "mark" includes any trademark, \* \* \* *entitled to registration* under this Act whether registered or not. [Emphasis added.]

■ Thus, to qualify for registration the asserted mark must be a "trademark" in the two-fold sense of (a) identifying the user's goods and (b) distinguishing such goods from those of others. Such a "trademark" becomes registrable on the Principal Register only as it meets the conditions of section 2, as stated in the following applicable provisions:

*Sec. 2. Trademarks registrable on the principal register*

No trademark *by which the goods of the applicant may be distinguished from the goods of others* shall be refused registration on the principal register on account of its nature unless it—

\* \* \* \* \* \*

(e) consists of a *mark* which, (1) when applied to the goods of the applicant is *merely descriptive* \* \* \* of them \* \* \*

(f) [e]xcept as expressly excluded in paragraphs (a)–(d) of this section, nothing in this chapter shall prevent the registration of a *mark* used by the applicant which has become *distinctive of the applicant's goods* in commerce. \* \* \*

From the foregoing it will be seen that section 2 limits registration on the Principal Register to "trademarks" and "marks," and in its preamble repeats the restriction found in section 45 that a trademark must serve to *distinguish* applicant's goods from those of others. Subsection (e) prohibits the registration of a "mark" which is "merely descriptive" of the goods while subsection (f), upon which appellant relies, provides the exception that nothing in Sec. 2 shall prevent the registration of a "mark" which has become "distinctive" of the applicant's goods in commerce.

The positions of the parties may be stated in additional detail in the terms of the statute.[3] Appellant argues that the term "the pill" qualifies as a "trade-

3. The precise grounds of the rejection which was affirmed by the Trademark Trial and Appeal Board are somewhat obscure.

The examiner in his letter of Sept. 11, 1963 in response to appellant's communication filed Jan. 7, 1963 stated:

The notation "The Pill" is so *highly descriptive* and so commonly used to designate an oral medicinal preparation that *no amount of evidence* could convince the Examiner that the mark presented serves to *distinguish* applicant's goods in commerce." [Emphasis added.]

The examiner here used the phrase "highly descriptive" as apparently meaning that the term could not function as a trademark and therefore would not be "capable of distinguishing applicant's goods," sections 2, 45. On this basis it is not seen how the term would be eligible for registration on the Supplemental Register, section 23, Trademark Act of 1946, 15 USC 1091.

However, there is evidence that the examiner at one time considered the term

to be "merely descriptive," section 2(e), in view of the earlier history of the prosecution. Appellant submitted evidence to prove distinctiveness under section 2(f) and this evidence was considered by the examiner but he then stated that "no amount of evidence could convince the Examiner that the mark presented serves to distinguish applicant's goods in commerce." Thus, in terms of the statutes, it appears that the examiner's position was that the term was not a trademark as defined in section 45, and could not distinguish appellant's goods in commerce, sections 2, 45.

In the Examiner's Answer of Apr. 6, 1964 he stated:

Registration is refused for the reason that it is not believed that the mark presented serves or would be looked upon as a mark *indicating a source of origin in the applicant.* [Emphasis added.]

The examiner appears to have receded from his previous position. In terms of the statute, the term was not registrable because it did not "identify [appellant's]

mark" under section 45 and, while it might be said to be "merely descriptive" [4] under section 2(e), the proofs of record show that it has become "distinctive" of appellant's goods, section 2(f), and therefore registrable under section 2.

The solicitor does not concede that the term "the pill" distinguishes appellant's goods from those of others, as required by section 45 and the preamble in section 2. The solicitor's position is that the term does not qualify as a "trademark," section 45, *because* it is the "common descriptive name" of the *product* and therefore does not "identify" or "distinguish" appellant's goods from those of others, section 45 and preamble, section 2.

The term, "common descriptive name" is found in section 14(c) (15 U. S.C. § 1064) which provides that a registered mark may be canceled "if the registered mark becomes the common descriptive name of an article or substance." It expresses principles long recognized in trademark law that not *every* term can function as a trademark, e. g., common descriptive names. See Vandenburgh, Trademark Law and Procedure 4, 26, 60–62 (1959). Cf. J. Kohnstam v. Louis Marx & Co., 280 F.2d 437, 440, 47 CCPA 1080, 1084. Where the term identifies *the product* to the public, it cannot serve to identify appellant's goods

or distinguish them from those of others. When this occurs, the term is the "common descriptive name" or, if not "descriptive," the "common name" or "generic" name of the product and hence is incapable of serving as a trademark. If for such reason the term is subject to cancellation, it should not be registered.

If the solicitor's position is correct there is no need to reach the further inquiry as to whether the term per se is a combination of words which may *properly serve* as a trademark, sections 45, 2, or whether it is "merely descriptive" under section 2(e) or whether from the evidence it is "distinctive" of appellant's goods in commerce under section 2(f). See In re Meyer & Wenthe, Inc., 267 F. 2d 945, 46 CCPA 919.

Appellant argues "the pill" is not the common descriptive name of an oral contraceptive and thus that it qualifies as a "trademark" or "mark," since it includes a combination of "words" and a "symbol." Appellant states in its brief:

> \* \* \* the trademark "the pill" comprises a unitary totality of three elements:
>
> 1—The article *the;*
> 2—The noun *pill*, which word has been disclaimed; and,
> 3—Quotation marks before and after the words *the pill* forming an in-

---

\* \* \* goods," section 45, and was not therefore a trademark registrable on the Principal Register. Apparently the examiner considered the evidence.

The board, in affirming the examiner, relied on several grounds. It stated that the *evidence* show the term did not *identify* appellant's goods; further, that the *evidence* did not show that the term *distinguished* appellant's goods from those of another. Apparently the board reached this conclusion by comparing appellant's goods, an oral contraceptive, to other methods of contraception as at the time registration was sought appellant was the sole producer of an oral contraceptive in pill form which had received FDA approval.

The board also held the term "the pill" was not such a combination of words which could be registered as a trademark, stating:

\* \* \* Manifestly, the utilization of the article "the" and of the quotation marks cannot convert a simple notation comprising ordinary words of the English language used in their ordinary sense into a registrable trademark.

Thus apart from the evidence, the board seems to have found the term was not registrable as it could not serve as a trademark, section 45.

Finally, the board considered that the evidence showed that the term was the "common descriptive name" of an oral contraceptive which could not be registered for appellant's own exclusive use. Cf. section 14(c).

4. Appellant does not argue the technical differences between a "pill" and a "tablet." "The pill" is apparently conceded to be descriptive of the nature of the goods, a pharmaceutical tablet.

tegral part of the trademark and not merely employed to set off those two words.

Appellant reasons that this "unitary totality of three elements" qualifies the term as a "trademark" or "mark" which is registrable.

Appellant argues that the evidence of record shows "public recognition * * * of 'the pill' as a nominative pertaining only to Appellant," which "continued subsequent to and notwithstanding F&DA [Food and Drug Administration] approval of other manufacturers' oral contraceptive products and the commercial marketing of such competitive products."

As background, appellant states in its brief:

The unitary expression "the pill" originated, in peculiarly appropriate circumstances, as a nickname * * *

* * * * * *

Appellant's norethynodrel-containing product was the original and continues to be an outstanding member of its class. * * *

* * * * * *

This product, in the most formal sense, is distinguished by the famous trademark Enovid.

* * * * *

By late 1961, Appellant knew that hundreds of thousands of women were using the Enovid product. Most significantly, Appellant came also to know that many of these women, as well as physicians, retail pharmacists, wholesale drug employees, and other interested persons, had conferred the nickname "the pill" on the product. Precisely when or how this soubriquet had its genesis cannot be documented with pinpoint precision. Nevertheless, the nickname stuck. When the public heard or said or wrote or read "the pill", it meant Appellant's Enovid product. And the expression, with the same meaning, likewise became current in the medical profession and the drug trade. Indeed, as other similar products have been developed by other manufacturers, these have sometimes been referred to as "another" pill or (manufacturer's name) pill.

But "the pill" has specific and continuing meaning. Appellant's norethynodrel-containing product is not this pill or that pill or indefinitely a pill or generally any pill. It is "the pill". To preserve this unique identificatory significance, Appellant utilized "the pill" extensively in its advertising, adopted the expression as a trademark, and filed the application which led eventually to this Appeal.

■ We find, however, there is substantial evidence of record in support of the solicitor's position that the term "the pill" serves merely to identify an oral contraceptive.[5]

---

5. Illustrative of such evidence in the record is the following:
"THE PILL"
"The pill," as the new product is already known in medical, cocktail, and sewing circles, is the most highly effective contraceptive ever available. * * *

* * * * * *

Altho "the pill" has not been generally publicized, already about a million women are taking it regularly as a contraceptive. Planned Parenthood centers are enthusiastic about the new oral contraceptive. * * *

* * * * * *

* * * Women who take it as a birth control measure have just as much—or more—chance of becoming pregnant as ever, once they stop taking the pills.

* * * * *

* * * Of those who took the pill regularly, only one became pregnant * * *

* * * * *

* * * The Planned Parenthood federation gave its medical approval shortly afterward, urging its 100 affiliated groups in the United States to make the pills available to any woman who wants them.

* * * * *

However, Planned Parenthood's experience with the pills indicates that very few women feel they are too expensive, * * * Beck, "THE PILL," Chicago Tribune (Magazine) pp. 18, 19, Mar. 4, 1962.
WORLD BIRTH CONTROL CHALLENGE
* * * Treatment consists of nothing but swallowing a pill once a day, * * *

In the foregoing we have set forth much of the evidence which supports the solicitor's position and, while we have not set forth the evidence supporting appellant's position, we have carefully considered it as it relates to the issue before us. We recognize also that not all of the evidence above referred to shows the exact term which appellant seeks to register. We consider it pertinent that a considerable amount of the evidence of record shows use of the words, the pill, *absent* quotation marks when these words are used in the context of meaning an oral contraceptive. There is considerable evidence which shows the term "the pill" as it is sought to be registered having been used in connection with appellant's goods. At best, the evidence of record simply does not support appellant's position that the addition of quotation marks to an otherwise common descriptive name

the patient has only to stop the pills for a while to revert to normal.
* * * the pills retail for * * *.
It may be possible to design the pill in such a way * * *
* * * when the patient became used to the pill * * *
LIFE Magazine p.   , Nov. 23, 1959.
BIRTH-CURB GROUP TO DISTRIB- UTE PILL
Oral Contraceptive Will Be Offered at Clinics * * *
    *       *       *       *       *
The pill was developed by * * *
New York Times, p.   , Aug. 4, 1960.
BIRTH CONTROL:
*The 'Remarkable' Pill*
    The tiny birth-control pill * * * proved to be an effective contraceptive * * *
Newsweek, p.   , Jan. 30, 1961.
* * * When a woman takes the pills as directed * * *
    The pills—the first 100 per cent effective method of birth control—would seem to be the ultimate in contraception. * * *
* * * the pills offer the best promise yet * * *
* * * some doctors are concerned about the long-term safety of the pills.
Pageant, p.   , Oct. 1961.
BIRTH CONTROL PILLS
* * * the birth-control pill is here.
* * *
* * * A pill a day is almost guaranteed to keep the stork away.
The Saturday Evening Post, p.   , June 30, 1962.
Evidence Fails To Link Pill To Six Deaths
    The government said * * * that studies so far had not turned up any evidence that a birth control pill * * *
* * * The pill has not been removed from the market.
The Denver Post, p. 41, Aug. 9, 1962.
The Five most-wanted cures
HOW CLOSE ARE WE TO A "CHEAP" (PENNY - A - DAY) BIRTH - CON- TROL PILL?

"The Pill" costs about * * * it is not suggested that
"The Pill" * * *
Ladies Home Journal, p. 40, Oct. 1962.
Extraordinary News About "The" Pill for Women (page 73)
An End to Woman's "Bad Days"?
Reader's Digest, Cover, Dec. 1962.
Test Ban—Technology; Birth Control— "The Pill"
        *       *       *       *       *
    "The pill" was developed in the 1950's * * * by the G. D. Searle Company * * *

    Although Enovid dominates the field at present, another company, Ortho Pharmaceutical, came on the market * * * with a * * * pill * * * and several other applications are pending both for new pills * * *. The pills vary a bit * * *. The pills in effect simulate * * *
    The response to the pill has been spectacular. * * * Approximately one out of four women experiences a variety of side effects and discontinues using the pill * * *
* * * the pill works by an essentially "natural" process * * *
        Clients of "The Pill"
    Another large group of potential beneficiaries of oral contraceptives is the poor * * *
        *       *       *       *       *
    The pill has run into trouble in a variety of ways. * * *
141 Science 618, 620, Aug. 16, 1963.
"THE PILL" — A PRACTICAL PROGRESSIVE PROGRAM FOR PLANNED PARENTHOOD
        *       *       *       *       *
    Family planning, especially through the use of birth control pills, is one of the most widely talked about medical subjects in the press today.
* * * in order to obtain continuity of care, most patients were seen at a special "Pill Clinic" * * *
Report, Planned Parenthood Association of Metropolitan Washington, D. C., Inc., M Street Clinic.

converts it into a trademark. To the contrary we find substantial evidence that the term is the common descriptive name of an oral contraceptive pill at the time the issue of registrability was under consideration in the Patent Office. Roselux Chemical Co. v. Parsons Ammonia Co., 299 F.2d 855, 49 CCPA 931, 942.

Under appropriate circumstances, we agree with appellant that:

The acquisition of a nickname, by the original or an outstanding member of a class, is a familiar incident of American life. In politics and public affairs, in sports and entertainment, and in commerce and business, nicknames perform the important function of singular and specific identification.

A commercial nickname, applied by the trade and the general public to a product, is entitled to trademark status, Callmann, The Law of Unfair Competition and Trademarks (Second Edition, 1950):

"If the public calls a product by other than its tradename, this nickname may become a trade symbol entitled as such to protection against unfair competition. Whether or not, it is similar to the original trademark, the soubriquet is protected as an independent trademark if the owner formally adopts it as such or unprotestingly allows its continued use." (Page 1233)

Callmann, in support of the proposition that a nickname applied to a product by the public may become a trade symbol, cites such examples as "Bud" for "Budweiser," "Coke" for "Coca-Cola," and the "Met" for the "Metropolitan Opera Association." Such trade symbols clearly serve to identify the trademark owner and distinguish his goods from those of others and are not "nicknames" given by the public to identify a product per se. Callmann also states, at page 1232:

* * * a mark may be so inescapably descriptive that it will defeat all attempts to transform it into a mark of identification and, in such a case, even long-continued use and large expenditures for advertising will not aid in the search for secondary meaning.

Whether the objection to registration of "the pill" is phrased as "highly descriptive" or "inescapably descriptive" or "common descriptive name," or "common name," or "generic name," on the facts of record the basis for the objection is the same: the term "the pill" here functions to identify the product to the public rather than to identify and distinguish appellant's goods from those of others and cannot be appropriated as a trademark. Where it appears from the evidence that registrability of the term is precluded under sections 45 and 2, inquiry under sections 2(e) and 2(f) is not necessary.

The decision of the board is affirmed.

Affirmed.

RICH, Acting Chief Judge (concurring), with whom ALMOND, Judge, joins.

I agree with the refusal of registration for the reasons stated in the opinion of the Trademark Trial and Appeal Board, as amended, as published at 143 USPQ 220.

The record evidence permits of no conclusion other than that of the board that "the pill" has come to indicate oral contraceptives in pill form, regardless of source, wherefore it *cannot* serve to distinguish the product of any single producer.

There is no other question to be discussed.