THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
April 27, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*In re Fat Boys Water Sports LLC*
_____

Serial No. 86490930
_____

Gene Bolmarcich of Law Offices of Gene Bolmarcich for Fat Boys Water Sports LLC.

Melissa Vallillo, Trademark Examining Attorney, Law Office 105 (Susan Hayash, Managing Attorney).
_____

Before Mermelstein, Gorowitz, and Masiello, Administrative Trademark Judges.

Opinion by Masiello, Administrative Trademark Judge:

Fat Boys Water Sports LLC ("Applicant") filed an application for registration on the Principal Register of the mark HOUSEBOAT BLOB, in standard characters, for the following goods:

> Inflatable float mattresses or pads for recreational use, namely, mattresses and pads from which the user may be launched into the air and onto a body of water; Inflatable mattresses for recreational use, namely, mattresses from

> which the user may be launched into the air and onto a body of water, in International Class 28.[1]

Applicant has disclaimed the exclusive right to use BLOB apart from the mark as shown.

The Examining Attorney refused registration on the ground that Applicant's mark is merely descriptive of Applicant's goods, under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1). The Examining Attorney also refused registration under § 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that Applicant's mark, as used in connection with Applicant's goods, so resembles the three marks set forth below, which are registered on the Principal Register,[2] as to be likely to cause confusion.

| Reg. No. | Mark | Goods/Services |
|---|---|---|
| 2705855 | THE BLOB | Giant inflatable, floating air bags, constructed of PVC reinforced vinyl, for use by commercial, institutional, for-profit and not-for-profit youth camps, church camps, campgrounds, and other outdoor recreation businesses as a component of their aquatic recreational facilities, namely, the ocean, lakes, ponds, and swimming pools in which such floating air bags are placed such that patrons can jump from a diving platform onto, and be launched off of, such floating air bags and into the water, in International Class 28.[3] |

---

[1] Application Serial No. 86490930 was filed on December 27, 2014 under Trademark Act Section 1(a), 15 U.S.C. § 1051(a), stating December 12, 2014 as the date of first use and first use in commerce.

[2] The three cited registrations are owned by the same entity.

[3] Reg. No. 2705855 issued April 15, 2003; Section 8 affidavit accepted; Section 15 affidavit acknowledged; renewed.

| 2827098 | THE BLOB | Retail services by telephone, online ordering, and direct solicitation by sales agents in the field of giant inflatable, floating air bags, constructed of PVC reinforced vinyl, for use by commercial, institutional, for-profit and not-for-profit youth camps, church camps, campgrounds, and other outdoor recreation businesses as a component of their aquatic recreational facilities, namely, the ocean, lakes, ponds, and swimming pools in which such floating air bags are placed such that patrons can jump from a diving platform onto, and be launched off of, such floating air bags and into the water, in International Class 35.[4] |
|---|---|---|
| 4338636 | WATERBLOB | Inflatable mattresses for recreational use, in International Class 28.[5] |

When the refusals were made final, Applicant appealed to this Board. Applicant and the Examining Attorney have filed briefs.

1. Refusal under Section 2(e)(1).

We will first address the Examining Attorney's refusal on the ground that Applicant's mark is merely descriptive of the identified goods.

A mark is merely descriptive of goods within the meaning of Section 2(e)(1) if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods. *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012); *see also, In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987). Whether a mark is merely

---

[4] Reg. No. 2827098 issued March 30, 2004; Section 8 affidavit accepted; Section 15 affidavit acknowledged; renewed.

[5] Reg. No. 4338636 issued May 21, 2013.

descriptive is determined in relation to the goods for which registration is sought and the context in which the mark is used, not in the abstract or on the basis of guesswork. *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978); *In re Remacle*, 66 USPQ2d 1222, 1224 (TTAB 2002). In other words, we evaluate whether someone who knows what the goods are will understand the mark to convey information about them. *DuoProSS Meditech Corp. v. Inviro Med. Devices Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012). A mark need not immediately convey an idea of each and every specific feature of the goods in order to be considered merely descriptive; it is enough if it describes one significant attribute, function or property of the goods. *See In re Gyulay,* 3 USPQ2d at 1010*; In re H.U.D.D.L.E.*, 216 USPQ 358 (TTAB 1982); *In re MBAssociates*, 180 USPQ 338 (TTAB 1973). The determination that a mark is merely descriptive is a finding of fact and must be based upon substantial evidence. *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007).

It is the Examining Attorney's burden to show, *prima facie*, that a mark is merely descriptive of an applicant's goods or services. *In re Gyulay*, 3 USPQ2d at 1010; *In re Accelerate s.a.l.*, 101 USPQ2d 2047, 2052 (TTAB 2012). If such a showing is made, the burden of rebuttal shifts to the applicant. *In re Pacer Tech.*, 338 F.3d 1348, 67 USPQ2d 1629, 1632 (Fed. Cir. 2003). The Board resolves doubts as to the mere descriptiveness of a mark in favor of the applicant. *In re Stroh Brewery Co.*, 34 USPQ2d 1796, 1797 (TTAB 1994).

As the Examining Attorney has shown, a "houseboat" is "[a] barge designed and equipped for use as a dwelling."[6] According to the dictionary, a "blob" is "[a] soft, amorphous mass."[7] However, it is not the dictionary definition of "blob" that is relevant in this case. As Applicant has explained:

> The term "blob" is generic for a type of air mattress used in bodies of water, such as lakes, as a recreational device whereby one is catapulted off the blob and into the water as another person jumps onto the opposite end of the blob.[8]

By way of further explanation, Applicant has made of record the Wikipedia entry for "Blobbing," which states in relevant part:

> **Blobbing** is an outdoor water activity in which a participant sits on the end of a partially inflated air bag (known as a water trampoline or blob) and is launched into the water when another participant jumps onto the air bag from a platform on the opposite side. The activity is popular at summer camps in North America. … The air bag is approximately 10 meters long (33 feet) by 2 meters wide (6 feet). The recommended height for the tower is 15 feet above the water surface, or 10 feet above the air bag.
> …
> The original blobs used were military surplus items. The "blob" was nothing other than a floating fuel tank that ships could tow. Since oil and gas floats on top of water, the fuel-filled bladders floated next to the ships. The first blobbers were the sailors who would jump from the ship, onto the "blob." Although the first recorded use of the blob was a summer camp near Austin, Texas called Camp Longhorn, in which the founders' sons used the blob in the camp's canoe bay. Tex Robertson the founder of Camp Longhorn, revised the blob for his summer camp.[9]

---

[6] THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2015), at <ahdictionary.com>, Office Action of October 14, 2015 at 7.

[7] *Id.* at 9.

[8] Applicant's response of July 1, 2015 at 11.

[9] *Id.* at 16.

The Examining Attorney has submitted much evidence showing that third parties use the term "blob" to describe the equipment used in camp activities similar to those described above. Examples follow:

> THE BLOB
>
> Part trampoline, part catapult, it's an absolute blast at the lake. A jump off the 15 foot ledge will send your friend flying through the air![10]
>
> **\*\*\*\*\***
>
> **Lake** – White sand beach, splash boats, deep water raft, water-landing triple zipline, the blob, inflatables, and shallow water deck with slide.
> …
> **Blob** – Jump off the Blob deck and land on a huge air bag to send the person at the other end of the blob flying through the air and into the lake.[11]
>
> **\*\*\*\*\***
>
> Be sure to test out the infamous "blob" and see which of your friends can get the most air.[12]
>
> **\*\*\*\*\***
>
> Watch this HD Video: brothers launch brothers in the Blob Big Air Competition at ACE Adventure Resort Lake in West Virginia.[13]
>
> **\*\*\*\*\***
>
> Epic Blob Fails 1000lb Weight HD
> …

---

[10] Website of Camp Bethel Ministries, Office Action of October 14, 2015 at 11.

[11] Website of Doe River Gorge, *id*. at 15-16.

[12] Website of Nantahala Outdoor Center, *id*. at 18-19.

[13] "ACE Adventure Resort / ACE Lake Blob Big Air Contest HD Video" at <youtube.com>, *id*. at 22.

> A compilation of the blob fails over the 4th of July Weekend. A 1000lb weight was used to launch people off the blob![14]

With this understanding of the particular meaning of BLOB in the context of Applicant's goods, we turn to consider whether Applicant's mark as a whole is merely descriptive. Applicant first argues that the Examining Attorney's analysis of descriptiveness was faulty because it did not take into consideration the three factors discussed in *No Nonsense Fashions, Inc. v. Consol. Foods Corp.*, 226 USPQ 502 (TTAB 1985). Applicant contends that the Examining Attorney should have considered "(1) the degree of imagination test, (2) the competitors' use test, and (3) the competitors' need test,"[15] and argues that "the Examining Attorney has provided no evidence establishing that anyone except Applicant has ever used the term HOUSEBOAT BLOB" and "has not shown that competitors need to use HOUSEBOAT BLOB or that the registration of HOUSEBOAT BLOB would deprive competitors of an apt description for a water blob."[16]

The three-part test described in *No Nonsense Fashions* has been superseded in the Federal Circuit by the rule that we apply here, enunciated in *In re Gyulay,* 3 USPQ2d 1009, *In re Chamber of Commerce of the U.S.*, 102 USPQ2d 1217, and *DuoProSS*, 103 USPQ2d 1753; *see In re Carlson*, 91 USPQ2d 1198, 1203 (TTAB 2009) (rejecting the tests set out in *No Nonsense Fashions*). Under the current standard, there is no requirement that the Examining Attorney prove that others

---

[14] Video at <youtube.com>, *id.* at 23.

[15] Applicant's brief at 8, 4 TTABVUE 10.

[16] *Id.* at 10, 4 TTABVUE 12.

have used the mark at issue or that they need to use it, although such proof would be highly relevant to an analysis under Section 2(e)(1). The correct test is whether the phrase forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods. As the Federal Circuit has said:

> A mark is merely descriptive if it "'consists merely of words descriptive of the qualities, ingredients or characteristics of' the goods or services related to the mark." [*Citing In re Oppedahl & Larson LLP,* 373 F.3d 1171, 71 USPQ2d 1370 (Fed. Cir. 2004).] One articulation of that rule … is that a mark is merely descriptive if it "conveys information regarding a function, or purpose, or use of the goods." [*Citing In re Abcor Dev. Corp., supra.*]

*DuoProSS*, 103 USPQ2d at 1755. The fact that Applicant may be the first or only user of a term does not render that term distinctive, if it otherwise meets the standard set forth in *In re Gyulay*, *In re Chamber of Commerce*, and *DuoProSS. See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (trademark law does not countenance someone obtaining "a complete monopoly on use of a descriptive term simply by grabbing it first") (citation omitted); *see also Clairol, Inc. v. Roux Distrib. Co.*, 280 F.2d 863, 126 USPQ 397, 398 (CCPA 1960) (even novel ways of referring to a product may nonetheless be merely descriptive); *In re Phoseon Tech. Inc.*, 103 USPQ2d 1822, 1826 (TTAB 2012).

The "degree of imagination" test is still relevant as it is part of the concept of suggestiveness. "A suggestive mark requires imagination, thought and perception to reach a conclusion as to the nature of the goods, while a merely descriptive mark forthwith conveys an immediate idea of the ingredients, qualities or characteristics

8

of the goods." *StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 111 USPQ2d 1649, 1652 (Fed. Cir. 2014) (citing *DuoProSS*, 103 USPQ2d at 1755 (internal quotation marks omitted)). Applicant, comparing its mark to hypothetical terms such as YACHT BLOB, CRUISE SHIP BLOB, BOAT BLOB, and PLATFORM BLOB, argues:

> In each case, the first word of these marks provides a consumer with no specific information about the nature of the blob itself. Users may also jump onto a blob from a diving platform …. This would not mean that the term "PLATFORM BLOB" would be descriptive. It would take a multi-step reasoning process for a consumer of a blob, which by design can be jumped onto in many different ways, including from watercraft, diving platforms, rock outcroppings, etc., to understand the suggestion made by words such as "houseboat", "platform", and "cliff" when used with the word "blob" since the resultant terms (e.g. "cliff blob") have no inherent meaning but are instead an incongruous combination of words."[17]

Applicant also argues that its mark might be understood to suggest "a very large blob that is 'as big as a houseboat.'"[18]

The Examining Attorney has made of record evidence from Applicant's own marketing materials that is relevant to the points raised by Applicant. Applicant's website states:

FAT BOYS HOUSEBOAT BLOB

> We are excited to announce that we are ready to launch *a version* of our launch pad *that will accommodate House boats* and Yachts. The Houseboat-blob is available to houseboats and yachts through Fat Boys. …

---

[17] Applicant's brief at 11, 4 TTABVUE 13.

[18] *Id.*

> *A protection mat is recommended. This goes between the yacht or houseboat and the Houseboat-blob.* We can also provide landing area buoys. These offer the swimmers a safe place to swim to and rest when they land and await pick-up, or swim back to the houseboat. …
>
> 3 years has been spent in close collaboration with the inventors of the Houseboat-blob *to refine and improve the product for use with house boats* and the yacht market. …
>
> Fits well alongside houseboat and has extra protective pad for protection between BLOB and houseboat.[19]

The Amazon web page offering Applicant's product states:

> Perfect size for jumping from a houseboat or small cliff …
>
> The houseboat is perfect to attach to a houseboat or small cliff. … The pod-like shape engulfs the launchee and creates a longer time connected to the houseboat during the launch. Even from a height of 3 to 5 feet above the launch pad, you can achieve incredible launch heights.[20]

It is clear on this record that the individual words HOUSEBOAT and BLOB have descriptive significance with respect to Applicant's goods. Applicant itself contends that BLOB is the generic name of the goods; and Applicant's marketing materials show that its product is appropriate for use with houseboats and was designed "for use with house boats." Therefore, we do not agree with Applicant that the word HOUSEBOAT provides "no specific information about the nature of the goods."

We must, however, consider the mark as a whole and ask whether the combination of the component words of Applicant's mark "conveys any distinctive source-identifying impression contrary to the descriptiveness of the individual

---

[19] Website at <fatboyslaunchpads.com>, Office Action of September 10, 2015 at 16-18 (emphasis added).

[20] Website at <amazon.com>, Office Action of October 14, 2015 at 27-28.

parts." *In re Oppedahl & Larson LLP,* 71 USPQ2d at 1372. If, instead, each component retains its merely descriptive significance in relation to the goods, the combination results in a composite that is itself merely descriptive. *See In re Tower Tech, Inc.,* 64 USPQ2d 1314, 1317-18 (TTAB 2002). Applicant's contention that HOUSEBOAT BLOB has "no inherent meaning" is untenable in light of the evidence summarized above, including evidence from its own marketing materials. Applicant offers no evidence, nor do we find, that the mark constitutes "an incongruous combination of words." The two component words of the mark combine in a manner and order that would be easily interpreted by persons familiar with the English language and the goods. They would be immediately understood to mean a blob-type inflatable launch pad that is specialized for use in association with a houseboat. This impression would, indeed, be a correct one, because according to Applicant's own description of the product, it "will accommodate" houseboats, has a special protection mat designed to be positioned between the blob and a houseboat, and was "refine[d] and improve[d] … for use with" houseboats. In this regard, the mark conveys an immediate idea of the nature and purpose of the goods. The fact that one could jump onto Applicant's product "from watercraft, diving platforms, rock outcroppings, etc." does not change the fact that the mark immediately conveys the message that the product is designed and intended for use with houseboats. We find that Applicant's mark is merely descriptive of Applicant's goods within the meaning of Trademark Act Section 2(e)(1).

2. Refusal under Section 2(d).

We turn next to the Examining Attorney's refusal on the ground that Applicant's mark is likely to cause confusion with respect to three registered trademarks. The cited marks belong to a single registrant. Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion as set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods at issue. *See Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976). In this case, Applicant and the Examining Attorney have also submitted evidence and arguments regarding the strength and weakness of components of the marks.

We confine our analysis to the issue of likelihood of confusion between Applicant's mark and the mark in Reg. No. 2705855, which is THE BLOB in standard characters. Of all the cited marks, this one is the most similar to Applicant's mark and is registered for goods that are most similar to Applicant's goods. If the refusal is not affirmed on the basis of this registered mark, it would not be affirmed on the basis of the other cited marks. *See In re Max Capital Group Ltd.*, 93 USPQ2d 1243, 1245 (TTAB 2010).

(a) The marks.

We first consider the similarity or dissimilarity of the marks THE BLOB and HOUSEBOAT BLOB in their entireties as to appearance, sound, connotation and

commercial impression. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005). While we consider each mark in its entirety, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided that our ultimate conclusion rests upon a comparison of the marks in their entireties. *In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).

The two marks are similar in appearance and sound to the extent that each includes the term BLOB. The words HOUSEBOAT in Applicant's mark and THE in Registrant's mark are points of dissimilarity in appearance and sound.

With respect to meaning and commercial impression, Applicant has sought to demonstrate that BLOB is generic or descriptive with respect to the goods. (The relevant evidence is discussed above in Part 1 of this decision.) In addition, Applicant posits that "Registrant's mark … is a double-entendre that uses the fame of the sci-fi classic movie 'The Blob' [citing record] and the descriptive/generic meaning of 'blob.' This is a case where the word 'The' makes a significant and outcome determinative difference …"[21] Applicant's suggestion that relevant customers will associate Registrant's mark with the film called "The Blob" is mere speculation, as there is no evidence to show that Registrant has promoted its goods or its mark by reference to the film. However, even if we accept that THE BLOB

---

[21] Applicant's brief at 7-8, 4 TTABVUE 9-10. *See* evidence regarding the referenced movie in Applicant's response of July 1, 2015 at 22-28, indicating that it has "enduring popularity" and has been called a "very famous piece of pop culture" and "[a] cult classic of gooey greatness."

may have a *double entendre* that Applicant's mark does not, in light of the evidence and the description of the goods for the mark THE BLOB, it is much more likely that customers would perceive it to mean an inflatable, floating launch pad. Similarly, consumers would perceive HOUSEBOAT BLOB to mean a special type of inflatable, floating launch pad for use in association with a houseboat, perhaps a special type offered by the same source that offers THE BLOB. Although these meanings differ, they are also closely related to each other.

With respect to the strength of the cited mark, Applicant argues:

> The term "blob" in the cited registration has little or no source identifying significance because it is either descriptive or generic with respect to the goods at issue. [Citations omitted.] Therefore, the term "blob" is conceptually weak … [T]he conceptual weakness of this shared subject matter weighs against the likelihood of confusion refusal.[22]

The Examining Attorney notes that Registrant's mark is incontestable under Section 15 of the Act, 15 U.S.C. § 1065. Section 33(b) of the Act states:

> To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be *conclusive evidence of the validity of the registered mark* and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.

Trademark Act Section 33, 15 U.S.C. § 1115(b) (emphasis supplied).

The Examining Attorney need not rely on incontestability to establish (or bolster) the validity of the cited registration. In a Board proceeding, *all* registrations on the

---

[22] Applicant's brief at 6, 4 TTABVUE 8.

Principal Register — incontestable or not — are considered valid. Trademark Act Section 7(b) provides that "[a] certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark." Although that section establishes only "prima facie evidence of ... validity," it has long been settled that the validity of a cited registration cannot be challenged in an *ex parte* proceeding. As the Federal Circuit and its predecessor court have stated, "As long as the registration relied upon … remains uncanceled, it is treated as valid and entitled to the statutory presumptions." *In re Dixie Rests. Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1535 (Fed. Cir. 1997) (quoting *Cosmetically Yours, Inc. v. Clairol Inc.*, 424 F.2d 1385, 165 USPQ 515, 517 (CCPA 1970)).[23] Thus, regardless of whether the cited registration is incontestable, we will not consider Applicant's contentions that the registered mark has no distinctiveness (because it is merely descriptive) or is incapable of distinguishing source (because it is generic). To do so would fail to accord the registration and the mark the validity to which they are entitled under Sections 7(b) and 33(a). *See In re Fiesta Palms LLC*, 85 USPQ2d 1360, 1363 (TTAB 2007) ("inasmuch as the cited mark is registered on the Principal Register, we must assume that it is at least suggestive and we cannot entertain applicant's argument that the registered mark is descriptive of registrant's services.").[24]

---

[23] Even in an *inter partes* proceeding, a plaintiff's pleaded registration must be considered valid unless the defendant seeks to cancel it by way of a counterclaim or a separate petition to cancel. *See* Trademark Rule 2.106(b)(2)(ii) (oppositions); 2.114(b)(2)(ii) (cancellations).

[24] If Applicant believed the cited registration to be invalid, it could have filed a petition to cancel the registration, in which case the Examining Attorney or the Board would have

On the other hand, considering the usage evidence bearing on the public's understanding of the term BLOB, as applied to inflatable floating launch pads, we find that Registrant's mark, although presumptively distinctive, is nevertheless weak as a source indicator.[25] Even so, we see little in Applicant's mark to distinguish it from Registrant's mark, as Applicant's mark merely adds a highly descriptive term to the registered mark, in such a way as to indicate to customers a suitable purpose of the goods. And although the registered mark includes the word "THE," which is absent from Applicant's mark, the presence or absence of this word is unlikely to allow consumers to meaningfully distinguish the marks, because we cannot find on the evidence of record that consumers would associate the trademark THE BLOB, as used on these goods, with the classic movie. *In re G.D. Searle & Co.*, 143 USPQ 220, 222–23 (TTAB 1966), *aff'd*, 360 F.2d 650, 149 USPQ 619 (CCPA).

As we will discuss in the following section of this decision, the goods of Applicant and Registrant are, in part, legally identical. In view of that fact, the mark HOUSEBOAT BLOB is likely to create the commercial impression of a subclass of goods of the type offered by the source of similar goods under the mark THE BLOB,

suspended further action on this application pending a determination of the registration's validity. 37 C.F.R. §§ 2.67, 2.117; TMEP § 716.02(a); TBMP § 1213.

[25] On the question of whether the incontestability of a registration indicates that the registered mark must be considered *strong*, the Board, in *Safer Inc. v. OMS Invs. Inc.*, 94 USPQ2d 1031, 1036 (TTAB 2010), noted a split among appellate courts on this issue, but ultimately concluded that it does not so indicate; and that "statutory presumptions do not affect the likelihood of confusion analysis." "The registrations alone are incompetent to establish any facts with regard to … any reputation [the registered marks] enjoy *or what purchasers' reactions to them may be*." 94 USPQ2d at 1036, quoting *Byk-Gulden, Inc. v. Trimen Labs., Inc.*, 211 USPQ 364, 368 (TTAB 1981) and *Hyde Park Footwear Co., Inc. v. Hampshire-Designers, Inc.*, 197 USPQ 639, 641 (TTAB 1977) (emphasis added).

but for a more particular type of use. In other words, consumers are likely to think that the source of THE BLOB has expanded its offerings to include a specialized version of the original product. Overall, despite the differences in appearance, sound, and meaning that we have noted above, we find that the marks create commercial impressions that are sufficiently similar as to cause confusion as to the source of Applicant's goods. Accordingly, the *du Pont* factor of the similarity or dissimilarity of the marks weighs in favor of a finding of likelihood of confusion.

(b)  <u>The goods</u>.

Next we will consider the similarity or dissimilarity of the goods as identified in the application and the cited registration. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1161-1162 (Fed. Cir. 2014); *Octocom Syst. Inc. v. Houston Computers Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990). Applicant's goods are:

> Inflatable float mattresses or pads for recreational use, namely, mattresses and pads from which the user may be launched into the air and onto a body of water; Inflatable mattresses for recreational use, namely, mattresses from which the user may be launched into the air and onto a body of water.

Registrant's goods are identified with somewhat greater specificity; for example, Registrant's identification of goods lists the material composition of the goods, types of customers, and types of bodies of water in which the goods may be used. However, they appear to be strikingly similar to Applicant's goods. Registrant's goods, in essence, are:

> Giant inflatable, floating air bags, … for use by … outdoor recreation businesses … in which such floating air bags

17

> are placed such that patrons can jump from a diving platform onto, and be launched off of, such floating air bags and into the water.

Although described in different words, we find the goods of Applicant and Registrant to be the same: in each case the goods are inflatable, floating devices designed to launch a person into a body of water for recreational use. The limitations in Registrant's identification merely provide more information about Registrant's goods than does Applicant's identification. Inasmuch as Registrant's goods are encompassed within the scope of Applicant's goods, the respective goods are legally identical in part. Accordingly, we find that the *du Pont* factor regarding the similarity or dissimilarity of the goods favors a finding of likelihood of confusion.

(c) <u>Trade channels; customers</u>.

Because the goods at issue are legally identical, we must presume that the goods of Applicant and Registrant move in the same channels of trade and are offered to the same classes of consumers. *See In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (even though there was no evidence regarding channels of trade and classes of consumers, the Board was entitled to rely on this legal presumption in determining likelihood of confusion); *Am. Lebanese Syrian Associated Charities Inc. v. Child Health Research Inst.,* 101 USPQ2d 1022, 1028 (TTAB 2011); *In re Smith and Mehaffey,* 31 USPQ2d 1531, 1532 (TTAB 1994). The types of customers identified in Registrant's identification of goods ("commercial, institutional, for-profit and not-for-profit youth camps, church camps, campgrounds, and other outdoor recreation businesses") are not excluded by Applicant's identification of goods and would be likely customers for the goods of both Applicant

18

and Registrant. These *du Pont* factors weigh in favor of a finding of likelihood of confusion.

(d)  Conclusion.

We have considered all of the arguments and evidence of record, including those not specifically discussed herein, and all relevant *du Pont* factors. We find that Applicant's mark so resembles the cited registered mark as to be likely to cause confusion, mistake or deception as to the source of Applicant's goods.

**Decision:**  The refusal to register Applicant's mark is AFFIRMED on the ground that the mark is merely descriptive of Applicant's goods, under Trademark Act Section 2(e)(1); and on the ground of likelihood of confusion with the mark in Reg. No. 2705855, under Trademark Act Section 2(d).